**John J. STANTON, Appellant,**

v.

**S. Jon GERSTENFELD and Montello Tenants Association and Montello Development Corporation, Appellees.**

**No. 89–716.**

District of Columbia Court of Appeals.

Oct. 30, 1990.

John J. Stanton, pro se.

Philip M. Musolino, Washington, D.C., for appellee S. Jon Gerstenfeld.

Alan Dranitzke, Washington, D.C., for appellee Montello Development Corp.

Before ROGERS, Chief Judge, and BELSON and STEADMAN, Associate Judges.

BELSON, Associate Judge:

This appeal is before us for consideration of motions for summary affirmance and summary reversal. The Rental Housing Conversion and Sale Act, D.C.Code §§ 45–1601—1663 (1990) affords tenants an opportunity to purchase the housing accommodation in which they live when the owner decides to sell it. The underlying Superior Court action was but one of several in which appellant Stanton has contested vari-

ous aspects of the sale of the apartment building in which he has resided. This appeal was taken by Stanton from the order of the Superior Court dismissing his action against Gerstenfeld, the sole general partner of the partnership that owned the housing accommodation in question. We affirm the trial court's order.

Stanton brought the underlying action in his own behalf, seeking, 1) a declaratory judgment that the manner in which Gerstenfeld attempted to effect the sale violated the Rental Housing Conversion and Sale Act; 2) an order enjoining Gerstenfeld from violating that statute's requirement that he bargain in good faith with the tenant organization and directing him to cease his efforts to require Stanton to vacate his unit; and 3) an award of damages for the uncompensated legal work that Stanton performed for the tenant organization, fees paid for professional consultants by the tenant organization, and punitive damages.

The issues Stanton raised and the theories he advanced were intertwined with the issues raised in several other actions. On October 25, 1989, this court entered an unpublished memorandum opinion and judgment summarizing the history of the litigation and, in the main, rejecting Stanton's positions in the related appeals. (Nos. 86–1569, 86–1618, 87–254, and 87–489). We will not repeat that history or summarize our holdings here. Suffice it to say that when the instant case came before Judge A. Franklin Burgess, Jr. of the Superior Court on a motion for dismissal on the ground that Stanton's complaint failed to state a claim on which relief could be granted, the issues before the court had

resolved themselves to the single matter that we address below.[1]

By the time this motion to dismiss came on for argument, the Montello Tenants Association (MTA) and the Montello Development Corporation (MDC), an entity the tenant organization had created, had been permitted to intervene as defendants,[2] and Stanton was the only tenant opposed to conversion. MTA and MDC had concluded an agreement to purchase the property from Gerstenfeld, who accordingly had deeded the property to them. MTA and MDC jointly filed the motion to dismiss Stanton's complaint against Gerstenfeld.

In moving to dismiss Stanton's complaint against the housing accommodation owner, the intervenors argued that the owner's obligations under the statute were "owed not to Stanton individually, but to the Tenants Association." They acknowledged that pursuant to D.C.Code §§ 45–1631 and –1632, under some circumstances at least, the owner must give each tenant the opportunity to purchase and an offer of sale. However, they argued:

> [S]ection 45–1641 explicitly states that for tenants in accommodations with five or more units to make a contract of sale with an owner, they must form and register a tenant organization. Upon registration of the tenant organization with the Mayor, "the organization constitutes the sole representative of the tenants, and the prior offer of sale is deemed an offer to the organization." Section 45–1640(1) (1990).

At oral argument before Judge Burgess, counsel for the tenant organization and the development corporation argued that this court's opinion in *Massengale v. Cafritz,* 471 A.2d 998 (D.C.1983) is controlling here. In *Massengale,* we held that the terms of a predecessor statute limited the right to

---

1. Appellees also argued that the case was moot. The trial judge's written order expressed his conclusion that this case was indeed moot as to the declaratory and injunctive relief Stanton sought, but the judge did not consider whether the damages claims were moot. In our view, the record before us provides an insufficient basis for a holding that these claims are moot. *See Paris v. United States Dept. of Housing and*

*Urban Development,* 713 F.2d 1341 (7th Cir. 1983) (action for subsidized housing was not moot merely because the owner sued had sold the property to another, because both buyer and seller were before the court).

2. Stanton has sought no relief against MTA or MDC in this action.

purchase housing, that the owner intended to sell, to an eligible tenant organization that had the legal capacity to hold title to real estate. In that case the tenant organization had stipulated to the dismissal of the lawsuit it had brought to enforce its right to purchase the accommodation, whereupon Massengale, a tenant, filed a complaint asserting, in his own right, a violation of his claimed right of first refusal to purchase the property. Pointing out that under the statute then in force only tenant organizations, as distinguished from individuals, enjoyed a right of first refusal, we sustained the trial court's dismissal of Massengale's complaint.

Stanton countered with the argument that *Massengale* does not control because, unlike Mr. Massengale, Stanton was not trying to buy the whole property; instead, he was asserting that there had been "statutory fraud" by the former owner, and that as a result of the former owner's violation of the statute, Stanton was "aggrieved, that I've suffered some personal injury and I'm seeking damages for it."

Stanton argued that if a tenant organization defaults in its obligation to assert its right to insist on good faith bargaining, where the owner had sold the property to the tenants association, the individual tenant has the right to sue for the damages he has suffered as a result of the bad faith bargaining.[3]

In addressing the parties' arguments from the bench, Judge Burgess first noted that it was undisputed that the housing accommodation had more than five units, that an association had been formed, and

that the association had purchased the housing accommodation. He stated his view that, under the circumstances, the tenant organization is the "party ... that can or cannot assert the rights of the association ... under the law." He went on to rule, in essence, that pursuant to the overall scheme of the statute, only the tenant organization, as distinguished from its individual members, could assert the rights of the organization or bring suit for any violations of the statute by the owner. Commenting that although Stanton was not authorized to sue in his own right, Stanton might have been able to bring a derivative action on behalf of the organization, the judge went on to state that Stanton had not, in any event, met several of the specific requirements of Superior Court Civil Rule 23–1 for a derivative action. For the reasons he had explained, the trial judge dismissed the action.[4]

The relevant portions of the Rental Housing Conversion and Sale Act unambiguously require the result the trial court reached. Section 45–1640 specifies the manner in which negotiations must be conducted when the housing accommodation being sold has five or more units. In order to make a contract of sale with an owner, the tenants of such an accommodation must form a tenant organization with the legal capacity to hold real property, incorporate that organization, and register it with the Mayor. "Upon registration, the organization constitutes the sole representative of the tenants, and the [owner's] prior offer of sale is deemed an offer to the organization...."

Section 45–1640(1).[5]

---

**3.** Stanton did not disagree with movant's counsel that Stanton had released, in an earlier settlement of his counterclaim on June 20, 1989, his claim for unbilled legal time and costs. See Motion for Summary Affirmance, p. 3.

**4.** It is from this order that this appeal was brought. After the order was entered Stanton filed a motion with the trial court to set aside the order granting summary judgment or, alternatively, to permit Stanton to pursue the matter as a derivative action. Stanton did not appeal

the denial of this motion. We observe that the trial court and appellant refer to the order appealed from variously as a dismissal and a summary judgment. While the term "summary judgment" may be the more accurate because of the court's consideration of undisputed facts relating to the sale of the property, the difference in terminology does not affect the analysis.

**5.** Section 45–1640(1) states in its entirety: .
(1) *Tenant organization.*—In order to make a contract of sale with an owner, the tenants shall:

■ Unlike the provisions for the sale of units in accommodation with two through four units, *see* § 45–1639, or single-family accommodations, *see* § 45–1638, the statutory method afforded tenants to purchase accommodations with five or more units gives the individual tenant no opportunity to negotiate with the owner or to purchase in the tenant's own right. The tenant organization is the sole entity that can conduct with the owner the negotiations required by § 45–1634 and other applicable provisions of the Act.

We agree with the view of the trial court that the statutory scheme would become unworkable if dissenting tenants, who disagreed with positions taken by their tenant organization, could attempt collaterally to undo an agreement, or disrupt negotiations between the tenant organization and the owner, by bargaining separately with the owner.

■ With respect to a housing accommodation of five or more units, it is only to the tenant organization that the owner owes any duties under the statute. Accordingly, if the conduct of an owner gives rise to any basis for a civil action against the owner under § 45–1653, it is only the tenant organization that is "aggrieved" as that term is used in § 45–1653, and, therefore, it is only the tenant organization that can bring a civil action against the owner under the statute.[6] The individual dissenting tenant, then, has no right to assert a claim under §§ 45–1653—1653.1 against the owner for

violation of the Act because when the accommodations consist of five or more units the tenant organization becomes the sole representative of the tenants. This result flows logically from The Rental Housing Conversion and Sale Act. *See, e.g.,* § 45–1640. As in *DeLevay v. District of Columbia Rental Accommodations Commission,* 411 A.2d 354, 360 (D.C.1980), to rule otherwise would present "practical difficulties" that the statute avoids by vesting authority for bargaining for and purchase of apartments comprised of five or more units in a tenant organization representing a majority of tenants. Moreover, any other interpretation of the Act could lead to an unworkable chaos of litigation if dissatisfied tenants could sue the owner after the owner and the tenant organization completed the sale of an accommodation consisting of five or more units.

■ Our holding in *Massengale v. Cafritz, supra,* while consistent with our holding here, does not control this case because the tenant there was not attempting to collect damages and obtain equitable or declaratory relief in his own right, as was Stanton. Rather, Massengale was attempting, in his own right, to effect the purchase of what was inferentially an accommodation of five units or more. *See Massengale, supra,* 471 A.2d at 999 n. 1. The underlying principle of these two cases is the same, however: under the statutory scheme adopted in this jurisdiction, where the accommodation in question has five

(A) Form a tenant organization with the legal capacity to hold real property, elect officers, and adopt bylaws, unless such a tenant organization exists in a form desired by the tenants; (B) file articles of incorporation; and (C) deliver an application for registration to the Mayor and the owner by hand or by first class mail within 45 days of receipt of a valid offer. If, at the time of receipt of the valid offer, a tenant organization exists in a form desired by the tenants, the delivery of the application for registration to the Mayor and the owner by hand or by first class mail shall be within 30 days of receipt of a valid offer. The application shall include the name, address, and phone number of tenant officers and legal counsel (if any); a copy of the articles of incorporation, as filed; a copy of

the bylaws; documentation that the organization represents at least a majority of the occupied rental units as of the time of registration and such other information as the Mayor may require. Upon registration, the organization constitutes the sole representative of the tenants, and the prior offer of sale is deemed an offer to the organization....

6. Section 45–1653 provides as follows:

An aggrieved owner, tenant, or tenant organization may seek enforcement of any right or provision under this chapter through a civil action in law or equity, and, upon prevailing, may seek an award of costs and reasonable attorney fees. In an equitable action, the public policy of this chapter favors the waiver of bond requirements to the extent permissible under law or court rule.

units or more, an individual tenant may not, in the tenant's own right, negotiate with the owner with respect to the sale of a housing accommodation pursuant to the Act, nor may the tenant sue in the tenant's own right for relief under § 45–1653.[7]

Accordingly, we grant the motion for summary affirmance and deny the motion for summary reversal.

*So Ordered.*

---

7. In view of our resolution of this issue and of *Stanton's decision to limit the appeal to the trial court's* order of dismissal/summary judgment, rather than appealing as well the denial of the motion to amend to assert a derivative action, we do not reach the question whether an individual tenant can prosecute such an action under the generally available provisions of Superior Court Civil Rule 23–1 in the face of the specific provision of § 45–1640(1) that "the [tenant] organization constitutes the sole representative of the tenants"; nor do we reach the question of whether an individual tenant can bring an action against the owner or against the tenant organization for relief other than the relief available pursuant to § 45–1653.