**Bertha REDMOND, et al., Plaintiffs,**

v.

**Ralph A. BIRKEL, et al., Defendants.**

**Civ. A. No. 88–133 SSH.**

United States District Court,
District of Columbia.

Aug. 18, 1992.

Bertha Redmond, pro se.

T. Clarence Harper, Harper & Williams, Washington, D.C., for L. Redmond, E. Williams, Allsop.

Joseph M. Cahill, Michael S. Levy, Dale A. Cooter, Cooter & Gill, Washington, D.C., for Bailey.

Nelson W. Rupp, Jr., Joel M. Savits, Deborah M. Whelihan, Washington, D.C., for Williams & Huffman.

Richard A. Bishop, O'Brien, Birney & Butler, Washington, D.C., for Ralph & Mary Birkel.

## OPINION

STANLEY S. HARRIS, District Judge.

Now before the Court are the motions for summary judgment by plaintiffs [1] Ber-

---

**1.** Initially, Bertha Redmond, Lucy Redmond,     Ernestine Williams, and Linda Allsop were rep-

tha Redmond, Lucy Redmond, Ernestine Williams and Linda Allsop, against defendants Ralph A. and Mary M. Birkel and William J. and Mary C. Bailey. On consideration of the entire record, the Court grants plaintiffs' motions in part, and denies them in part.[2]

## BACKGROUND

■ This suit originated on January 21, 1988, when plaintiffs filed a complaint against defendants Birkel and Bailey based upon defendants' alleged violation of the Rental Housing Conversion and Sale Act ("the Act" or "Rental Housing Act"), D.C.Code Ann. § 45–1601 *et seq.* (1981). The Act, established with the apparent objective of combatting increasing displacement of low to moderate income District of Columbia residents, guarantees tenants the opportunity to purchase the property on which they reside when the owner places the property on the market for sale.

For the purpose of resolving these motions, the Court accepts the following facts alleged in plaintiffs' summary judgment motions as true.[3] In 1986, plaintiffs were tenants of 4301, 4305, 4309, and 4313 Halley Terrace, S.E., Washington, D.C. ("Halley Terrace Apartments").[4] The Halley Terrace Apartment complex consists of four buildings containing a combined total of more than five apartment units.[5] On or about December 24, 1986, the Birkels sold the Halley Terrace Apartment complex to the Baileys for $238,000.00. Plaintiffs (or other tenants) were given no notice of the Birkels' intent to sell the Halley Terrace Apartments to the Baileys. The Baileys have maintained the apartments as rental units.

Plaintiffs argue that they are entitled to summary judgment as to liability because they were never notified that their buildings were offered for sale, and, therefore, never had the opportunity to exercise their statutory right to purchase their building.

## DISCUSSION

Defendants raise several potentially dispositive issues in their opposition to plaintiffs' motions for summary judgment. These issues would have been raised more properly in a cross-motion, however, the Court resolves them here.

*Applicability of the Rental Housing Act*

Defendants contend that the Rental Housing Act does not apply to the sale at issue because the sale was not for purposes of demolition or discontinuance of housing use. Section 45–1631(a) of the Code states:

> Before an owner of a housing accommodation may sell the accommodation, or issue a notice of intent to recover possession, or notice to vacate, for purposes of demolition or discontinuance of housing use, the owner shall give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale.

■ This section is somewhat ambiguous. On first blush, it appears that defendants may be correct because the phrase "for purposes of demolition or discontinuance of housing use" appears to modify every phrase preceding it. If that were the case, the statute would apply only to sales for purposes of demolition or discontinuance of housing use, notices of intent to recover possession for purposes of demolition or discontinuance of housing use, and notices to vacate for purposes of demolition

---

resented by the same counsel. Bertha Redmond is currently proceeding *pro se,* and has filed a motion for summary judgment separate from that of the other plaintiffs.

2. The Court is issuing a related Order today, which deals with plaintiffs' motions to declare invalid and stay defendants' offer of sale, and defendants' motion for leave to amend their counterclaim to seek declaratory relief.

3. The Baileys have not put forth any evidence demonstrating a genuine dispute as to any of

the facts set forth herein. The Birkels have not responded to plaintiffs' motions for summary judgment.

4. It is the Court's understanding that all plaintiffs still reside at this address.

5. Defendants and Bertha Redmond do not agree on the number of units in one of the buildings. However, it is undisputed that the total number of units in the complex exceeds five.

or discontinuance of housing use. However, an analysis of the Rental Housing Act of 1977, D.C.Code Ann. § 45–1681 *et seq.* (Supp.1980), which was amended by the current Act, indicates that the legislature intended the notice and opportunity to purchase language to apply to all sales of rental property.[6]

Similarly, two earlier versions of the current Act indicate that the notice and opportunity to purchase requirement was to apply to all sales. D.C. Council, Comm. on Housing and Economic Development, Rental Housing Conversion and Sale Act of 1980, Bill 3–222, § 402 (Comm. Print May 13, 1980); D.C. Council 3–222, § 402 (Nov. 13, 1979).[7] There is nothing to suggest that the legislature intentionally changed the applicability of the statute. Rather, it appears that the D.C. Council reorganized the phrases of the provisions without intending to change their meaning. Therefore, the Court concludes that the Act applies to all sales of rental property, and plaintiffs are entitled to bring suit for relief based upon defendants' failure to have given notice of the sale of the apartment complex.

### Application of the Statute

Defendants argue that, even if the Rental Housing Act does apply to the 1986 sale, plaintiffs must purchase the four-building complex in its entirety, rather than purchase one or two buildings individually. To do otherwise, defendants insist, would decrease the value of the property, and would allow plaintiffs to purchase the property without matching the third-party purchasers' offer.

▇▇▇▇ Defendants are correct. If allowed to purchase this property, plaintiffs must purchase the entire property. Property owners (sellers) might lose a substantial amount of money if forced to sell large properties one chunk at a time. The Act states that "[t]he purposes of this chapter favor resolution of ambiguity by the ... court toward the end of strengthening the legal rights of tenants or tenant organizations to the maximum extent permissible under law." D.C.Code Ann. § 45–1661. However, that section must be read in light of the purposes of the Act, which include "strengthen[ing] the bargaining position of tenants ... without unduly interfering with the rights of property owners to the due process of law." *Id.* § 45–1602(1). Furthermore, nothing in the Act suggests that a landlord must offer to sell the property to the tenants for a lower price than that which was offered by a third-party purchaser. In fact, a provision limiting the sale price for tenants was proposed, but not adopted. D.C. Council 3–222, § 405 (Nov. 13, 1979). The legislature's rejection of that provision confirms its intent not to force owners to sell for a lower price than that offered by a third party. *See also* D.C.Code Ann. § 45–1634.[8]

---

6. The Rental Housing Act of 1977 provided: "A landlord of a housing accommodation comprised of two (2) or more rental units may sell it to a purchaser but only after the landlord has done the following: ... (b) in the case of a housing accommodation comprised of more than four (4) rental units, given the organization of tenants with the legal capacity to hold real estate an opportunity to purchase the housing accommodation at a price which represents a bona fide offer of sale.... If at the time of receipt of the notice no eligible organization of tenants exists, the tenants shall be afforded at least thirty (30) days therefrom in which to form an organization...." D.C.Code Ann. § 45–1699.9 (Supp. 1980).

7. The November 13, 1979, version of the Act stated:
"Before an owner of a housing accommodation may (a) sell the accommodation; (b)

issue a notice of intent to recover possession for purposes of discontinuance of housing use or demolition; ... (d) issue a notice to vacate on account of sale, discontinuance of housing use, or demolition; the owner shall give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale."
The May 13, 1980, committee print stated: "Before an owner of a housing accommodation may sell the accommodation, the owner shall give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale."

8. Defendants cite *Marshall v. D.C. Rental Housing Comm'n*, 533 A.2d 1271 (D.C.1987), for the proposition that several buildings can be considered one "housing accommodation." *Marshall* is distinguishable because it analyses statutory language significantly different from that in § 45–1603. Furthermore, it deals with the

Defendants assert further that, since the Halley Terrace Apartments must be purchased as a whole, the sale must be transacted under the provision that applies to "accommodations with 5 or more units," *id.* § 45–1640, and not the provision that applies to "accommodations with 2 through 4 units," *id.* § 45–1639. The Act permits tenants in an accommodation with 2 to 4 units to respond to the owner's offer of sale first jointly, then severally. *Id.* § 45–1639. For accommodations with 5 or more units, however, the Act requires the tenants to form a tenant organization to contract for the sale of the property. *Id.* § 45–1640. Because the four Halley Terrace buildings constitute one complex with five or more units, the latter provision applies to plaintiffs' claim.

Based on § 45–1640's tenant organization requirement, defendants argue that plaintiffs have no standing to sue for relief as individuals. Defendants cite *Stanton v. Gerstenfeld*, 582 A.2d 242 (D.C.1990), for support, but *Stanton* is distinguishable. In *Stanton*, an individual tenant sued the seller of an apartment building for failing to bargain in good faith. The court dismissed the suit because only the tenant organization had standing to sue under § 45–1640(1)(C). However, the *Stanton* court specifically stated that "it [is] undisputed that the housing accommodation had more than five units, that an association had been formed, and that the association had purchased the housing accommodation." *Stanton*, 582 A.2d at 244. The tenants in *Stanton* apparently had been given proper notice of the owners' intention to sell. When they formed the tenant organization as required under the Act, it deprived the tenants of standing as individuals.

■ In the instant case, plaintiffs never formed a tenant organization which would deprive them of standing as individuals under *Stanton*. Plaintiffs are not at fault for their failure to form an organization. The Birkels gave no notice that the Halley Terrace Apartments were being offered for sale. Since the Act requires tenants to form an organization after notice is given, the provision is inapposite to plaintiffs' claim. Plaintiffs properly can sue as individuals to challenge the lack of notice.[9] D.C.Code Ann. § 45–1640.

Defendants further argue that plaintiffs are not entitled to relief unless they can show that they are financially capable of purchasing the Halley Terrace Apartments. Plaintiffs respond that financial capacity is irrelevant to the requirement of notice, because financial capacity becomes relevant after notice is given and an offer is made.

Plaintiffs are correct for two reasons. First, there is nothing in the Act that suggests that tenants' financial capacity has any relevance to the requirement of notice. *See id.* §§ 45–1631, 1632. Second, it is unlikely that low to moderate income individuals would be able to raise the capital necessary to purchase multi-unit buildings without forming tenant organizations. Thus, the purpose of the notice provision is to provide tenants time within which to seek to form a tenant organization, and, therefore, provide more tenants with some opportunity to purchase their residences.

*Remedies*

■ Lastly, defendants argue that, even if they have acted improperly, plaintiffs are not entitled to damages under the Rental Housing Act. Defendants are correct that damages cannot be awarded under the Act. Section 45–1653 states:

> An aggrieved owner, tenant, or tenant organization may seek enforcement of any right or provision under this chapter through a civil action in law or equity, and, upon prevailing, may seek an award

similarity of housing accommodations for the purpose of determining rent increases, not for determining how the property should be sold.

9. Similarly, plaintiffs' standing has not been usurped by a tenant organization here, because no organization has been formed. Defendants also cite *Massengale v. Cafritz,* 471 A.2d 998

(D.C.1983). The *Massengale* court's dismissal of the claim of an individual tenant who attempted to purchase the property in which he lived after proper notice of sale was given, after an association was formed, and after the properly formed association failed to sue for an alleged violation of its rights, is not in contradiction with our result. *Id.* at 998–999.

of costs and reasonable attorney fees. In an equitable action, the public policy of this chapter favors the waiver of bond requirements to the extent permissible under law or court rule.

*Id.* § 45–1653. Nothing in this section suggests that plaintiffs can collect damages. On the contrary, the language of § 45–1653 allows plaintiffs to seek only enforcement of the act, costs, and reasonable attorney fees. The Act specifically outlines civil and criminal penalties for violations of its provisions, but contains nothing pertaining to damages. *See id.* §§ 45–1656, 1660. In addition, a proposed version of the Act specifically would have allowed a tenant or tenant organization to sue "to enforce the terms of this act or to seek compensation for damages or attorneys fees." D.C. Council 3–222, § 411 (Nov. 13, 1979). Section 45–1653 apparently replaced that section and eliminated the right to sue for damages in the earlier version of this Act.[10]

## CONCLUSION

Under the Rental Housing Act, defendants should have given the plaintiffs notice that the Halley Terrace Apartments were being offered for sale. In addition, plaintiffs were not required to form a tenant organization before suing for notice under the Act, and plaintiffs' financial capacity was not relevant to defendants' burden of giving notice. However, if allowed to purchase the Halley Terrace Apartments, plaintiffs would have to purchase the entire complex, rather than one or two buildings individually. Lastly, plaintiffs cannot sue for damages under the Act.

Accordingly, plaintiffs' motions for summary judgment are granted in part, and denied in part.

---

**10.** This Opinion speaks specifically to plaintiffs' opportunity to sue for monetary damages under the Rental Housing Act. The Court makes no determination, at this time, as to plaintiffs' rights to sue for damages under counts two and three of the amended complaint. To the extent that plaintiffs' motion for summary judgment addressed those counts, the motion is denied. Plaintiffs have not alleged and supported sufficient facts to state a *prima facie* claim on the theories advanced in counts two and three.