Bertha REDMOND, Plaintiff,

v.

Ralph A. BIRKEL, et al., Defendants.

Civil Action No. CA 88–133.

United States District Court,
District of Columbia.

July 2, 1996.

J. Andrew Heaton, Washington, DC, for Plaintiff.

Richard A. Bishop, O'Brien, Birney & Butler, Washington, DC, for Defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are the Birkel defendants' motion for summary judgment on Counts II and III of plaintiff's amended complaint, plaintiff's opposition thereto, and defendants' reply.[1] Upon careful consideration of the entire record, defendants' motion for summary judgment is granted.

*Background*

The Court briefly discusses the long history of this action. Plaintiff Bertha Redmond, the sole remaining plaintiff in this action, and three other plaintiffs (plaintiffs Lucy Redmond, Linda Allsop, and Ernestine Williams) filed a lawsuit against defendants William and Mary Bailey and Ralph and Mary Birkel on January 21, 1988, and plaintiffs filed an amended complaint against defendants on December 13, 1988. Plaintiffs claimed in Count I of their amended complaint that defendants violated the District of Columbia Rental Housing Conversion and Sale Act ("the Rental Housing Act"), D.C.Code Ann. § 45–1601 *et seq.* (1990), when the Birkels sold plaintiffs' apartment complex, Halley Terrace, to the Baileys for $238,000 in late 1986, without giving notice to the tenants of the complex of their intent to sell the complex. (The Rental Housing Act, *inter alia,* guarantees tenants of an apartment complex the right to receive notice of an impending sale and the opportunity to purchase the property.) Plaintiffs also claimed in Counts II and III of their complaint that defendants conspired to defraud plaintiffs and that defendants fraudulently misrepresented to plaintiffs that their apartment complex had not been sold to the Baileys, when in fact it had been.[2] At the time plaintiffs' complaint and amended complaint were filed, all plaintiffs were represented by T. Clarence Harper, Esq.

On April 6, 1988, the Baileys filed a cross-claim for indemnification against the Birkels; they also filed a third-party complaint against the law firm of Williams & Huffman for breach of contract. On January 5, 1989, the Birkels filed a cross-claim against the Baileys and Williams & Huffman for indemnification.

On August 24, 1989, plaintiffs filed a Motion for Partial Summary Judgment as to Count I of plaintiffs' Complaint. On September 9, 1989, plaintiff Bertha Redmond moved the Court to withdraw T. Clarence Harper as her attorney. Thereafter, on October 11, 1989, plaintiffs moved for leave to withdraw their motion for partial summary judgment. On January 23, 1990, this Court granted plaintiffs' request to withdraw their motion for partial summary judgment and granted plaintiff Redmond's request to withdraw T. Clarence Harper as her attorney.

Bertha Redmond initially filed notice with the Court on March 23, 1990, that she would be appearing *pro se.* (She was later appointed counsel, as discussed below.) On August 3, 1990, Bertha Redmond filed a motion for summary judgment as to all counts of the amended complaint. On December 31, 1990, plaintiffs Lucy Redmond, Williams, and Allsop, still represented by counsel, filed a motion for partial summary judgment as to Count I of the amended complaint. On August 18, 1992, this Court granted plaintiffs' motions for summary judgment as to Count I of the amended complaint and denied plaintiff Bertha Redmond's motion for summary judgment as to Counts II and III of the amended complaint.

Plaintiffs Allsop, Williams, and Lucy Redmond filed a motion to dismiss the complaint and for an award of attorney's fees, on August 4, 1993. Plaintiff Bertha Redmond also joined the motion for attorney's fees, for the period of time during which she was represented by T. Clarence Harper. This Court granted the three plaintiffs' motion to dis-

---

1. The Birkel defendants are the only defendants remaining in this action, plaintiff is the only remaining plaintiff, and Counts II and III are the only counts still at issue.

2. William Bailey died after this lawsuit was instituted.

miss on September 24, 1993, and referred the case to Magistrate Judge Robinson for a report and recommendation on the issue of attorney's fees and costs. Magistrate Judge Robinson issued a report and recommendation finding the Birkel and Bailey defendants, but not the third-party defendants, liable for attorney's fees and costs, and on April 22, 1994, this Court granted plaintiffs' motion for attorney's fees and costs.

On September 14, 1994, plaintiffs Allsop, Williams, Lucy Redmond, and Bertha Redmond (for the period during which she was represented by T. Clarence Harper), along with all defendants and third-party defendants, entered into a settlement agreement pursuant to which the cross-claims filed by the Bailey and Birkel defendants and plaintiffs' claim for attorney's fees would be dismissed with prejudice. On January 26, 1995, the Bailey defendants and third-party defendants Williams & Huffman and Byron Huffman entered into a settlement agreement pursuant to which the third-party complaint filed by the Bailey defendants would be dismissed with prejudice. On February 3, 1995, the parties filed a stipulation and order of dismissal pursuant to the two settlement agreements.[3]

Plaintiff Bertha Redmond was appointed counsel from the Court's Civil Pro Bono Panel on August 16, 1995.[4] The only claims now remaining before the Court are her claims of conspiracy to defraud and fraudulent misrepresentation (Counts II and III of the amended complaint) against the Birkel defendants.[5]

*Discussion*

■ Defendants have moved for summary judgment on Counts II and III, arguing that no genuine issue of material fact exists as to whether they conspired to defraud plaintiff or made fraudulent misrepresentations as to

the ownership of the Halley Terrace complex, and that defendants accordingly are entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In considering defendants' summary judgment motion, all evidence and the inferences to be drawn from it must be considered in a light most favorable to plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir. 1994). Summary judgment cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (emphasis in original).

■ Under District of Columbia law, to prevail on a claim of fraud, a party must show: (1) a false representation of a material fact; (2) knowledge of falsity; (3) "intent to mislead another into relying on the representation;" (4) reasonable reliance; and (5) injury as a result of reliance. *Synergistic Technologies, Inc. v. IDB Mobile Communications, Inc.*, 871 F.Supp. 24, 30 (D.D.C. 1994) (quoting *Williston on Contracts* (3rd Ed.) at § 1487A); *see also High v. McLean Financial Corp.*, 659 F.Supp. 1561, 1566 (D.D.C.1987). A fraud plaintiff must prove each of these factors by clear and convincing evidence, *see Hercules & Co. v. Shama Restaurant Corp.*, 566 A.2d 31, 39 n. 16 (D.C. 1989), and lack of proof as to one or more of the elements causes a fraud claim to fail. *Wiggins v. District Cablevision, Inc.*, 853 F.Supp. 484, 498 (D.D.C.1994) ("a pleader

---

3. Again, Bertha Redmond was a party to the stipulation and order of dismissal only as to the period of time during which she was represented by T. Clarence Harper.

4. The Court extends its appreciation to plaintiff's appointed counsel, J. Andrew Heaton, for his able representation of plaintiff.

5. On July 11, 1995, the Court granted plaintiff a refund of $100 improperly charged her by the

Clerk of the Court, denied plaintiff's motion for attorney's fees (or the equivalent) incurred during the time she represented herself, and referred her motion for costs to a magistrate judge for resolution. On April 26, 1996, the Court declined to adopt the report and recommendation of the magistrate judge (who had recommended against awarding any costs to plaintiff) and awarded plaintiff $525.59 in costs.

'must allege such facts as will reveal the existence of all the requisite elements of fraud' ") (quoting *Higgs v. Higgs,* 472 A.2d 875, 876 (D.C.1984)). While a plaintiff need not establish all the elements of fraud in alleging a conspiracy to defraud, she must allege "the formation and operation of the conspiracy, wrongful acts done in furtherance of the common scheme, and damages suffered as a result." *Wiggins,* 853 F.Supp. at 498 n. 27; *Higgs,* 472 A.2d at 877. Because plaintiff has not established that defendants' alleged fraud has caused her injury, one of the requisite elements of fraud and of a conspiracy to defraud, Counts II and III cannot stand.

Were it not for the lack of evidence supporting plaintiff's claims that defendants' actions caused her injury, plaintiff's claims of fraud and conspiracy—though tenuous indeed—would perhaps not be fit for summary judgment. The parties' affidavits in support of their motion and opposition muster conflicting facts on several issues relevant to a fraud inquiry. In support of their motion for summary judgment, defendants submit an affidavit from Ralph Birkel regarding the circumstances of the sale of Halley Terrace. Defs.' Mot. for Summ. J., [unnumbered] Ex. 1. In his affidavit, Birkel states that he "knew of a District of Columbia law with respect to selling of apartment units in the District, but was mistakenly under the impression that written notice to tenants was only required in the case of condominium conversion...." Aff. of Ralph Birkel (hereinafter "Birkel Aff.") at 2. Birkel further states that he sent "a written notice to each tenant ... on December 15, 1986, ... informing [them] of the pending sale and change of ownership," and that "none of the tenants responded to the notice...." *Id.* Birkel avers that he had no contact with any of the tenants at Halley Terrace after settlement, and that he made no statements to them about who owned the property. *Id.* Birkel concludes by stating that he sold Halley Terrace because he was in poor health, and that he "did not intend to withhold or conceal information relative to the sale of the

Halley Place property to the Baileys." *Id.* at 3.

Plaintiff has submitted exhibits and affidavits with her opposition to defendants' motion for summary judgment that flatly contradict elements of the Birkel affidavit. For example, she submits as Ex. 5 to her opposition a copy of the December 15, 1996, notice Birkel sent to the Halley Terrace tenants, purportedly informing them of the change in ownership. Pl.'s Opp., Ex. 5. The notice is ambiguous at best. Addressed to "Tenants—Halley Terrace Apts.," it states in full:

> This is to notify you that effective January 1, 1987, management of the apartments has been assumed by: Mr. William Bailey. All rent checks shall be addressed in Mr. Bailey's name. All rents shall be in the form of a money order. For the Owners: /s/ Ralph A. Birkel

Contradictory to defendant Birkel's assertion, this notice to the tenants does little to inform them of the "pending sale and change of ownership"; even if the tenants inferred from the change in the party to whom they were writing rent checks that the ownership of the building had changed, that inference is undermined by Birkel's statement that Bailey was assuming "management" of the apartments, and by his signing the notice "For the Owners." [6]

In addition, plaintiff submitted a sworn affidavit executed in 1990 which states, contrary to Birkel's assertion, that in August 1987, Birkel told her that he was still the owner of Halley Terrace and that he had "hired" William Bailey to manage the buildings for him. Pl.'s Opp., Ex. 6, at 4. Birkel apparently made this statement to plaintiff shortly after the District of Columbia government had sent him a letter inquiring about Birkel's potential violation of the Rental Housing Act. Pl.'s Opp., Ex. 7. Plaintiff also states in her 1990 affidavit that the tenant-manager of Halley Terrace, Gladys Elazer, told her that Bailey was the new owner but that "she had been instructed by Mr. Bailey to change her story to me by stating that Mr. Birkell [*sic*] still held own-

---

**6.** Of course, Birkel and his wife were still ostensibly the owners of Halley Terrace; the closing did not take place until approximately two weeks after Birkel sent the notice to the tenants.

ership to the buildings." Pl.'s Opp., Ex. 6, at 2.

Finally, plaintiff submitted as exhibits to her opposition letters sent to William Bailey by Ralph Birkel, discussing (*inter alia*) the favorable tax consequences of concluding a sale of the Halley Terrace property before January 1, 1987. Pl.'s Opp., Exs. 1 and 2. Plaintiff argues in her opposition to defendants' motion for summary judgment that defendants were motivated to conceal the sale of the property because they wanted to take advantage of the tax laws in effect prior to 1987. Under the Rental Housing Act, tenants must be given a minimum of 295 days to form a tenants' organization, negotiate a contract, and secure financing. D.C.Code Ann. § 45–1640 (1990).[7] Accordingly, if defendants had abided by the requirements of the Rental Housing Act, they would have not been able to conclude the sale of the complex prior to the new tax laws taking effect, since Birkel apparently did not contact Bailey about selling Halley Terrace until early October 1986.[8]

■ Viewing the evidence in the light most favorable to plaintiff, plaintiff's claims of conspiracy and fraudulent misrepresentation would perhaps (albeit barely) survive summary judgment on all elements of her fraud claims but one. Plaintiff has not put forward any concrete evidence of injury resulting from her reliance on defendants' misrepresentations. Plaintiff argues that her injury flows from the loss of an opportunity to purchase Halley Terrace, an opportunity she and her fellow tenants should have been allowed under the Rental Housing Act. Defendants contend that, even if this injury was real and quantifiable, no damages arose therefrom, because when plaintiff was offered the opportunity to buy Halley Terrace in 1992, plaintiff did not buy the complex.

Plaintiff responds that the 1992 offer of sale is a red herring. She argues that the issue is not that plaintiff did not buy the property six years after the initial sale (when, plaintiff contends, its value had decreased due to the deteriorating condition of the apartments); rather, the issue is whether plaintiff would have bought the apartment complex in 1986, if given the proper notice of the impending sale. This issue, however, is where plaintiff's barely supportable fraud claim collapses.

In order for plaintiff to have had an opportunity to purchase Halley Terrace, she would have needed to form a tenant organization with the capacity to hold real property and register that organization with the mayor. This is a mandatory requirement for apartment complexes containing five or more units; accordingly, plaintiff could not have purchased the complex by herself.[9] *Stanton v. Gerstenfeld,* 582 A.2d 242, 244 (D.C.1990). The District of Columbia Court of Appeals held in *Stanton:*

> In order to make a contract of sale with an owner, the tenants of [a housing accommodation with more than five units] must form a tenant organization.... [T]he statutory method afforded tenants to purchase accommodations with five or more units gives the individual tenant no opportunity to negotiate with the owner or to purchase in the tenant's own right. The tenant organization is the sole entity that

---

7. As best the Court can discern, plaintiff is adding the 45–day requirement of § 1640(1) [registration], to the 120–day requirement of § 1640(2) [negotiation], to the 120–day requirement of § 1640(3) [financing], and adding 10 days for turnaround between the tenant organization's mailing in of its application for registration and its subsequent receipt of the executed statement of registration. *See* D.C.Code Ann. § 45–1640(1). A tenant organization also has a 15–day right of first refusal that begins to run at the end of the § 1640(2) negotiation period. *See* D.C.Code Ann. § 45–1637.

8. Possessing a motive to defraud and committing a fraud are, of course, two separate things, but

plaintiff's argument is somewhat relevant to the issue of defendants' intent. Relevant as well, however, are Richard Birkel's assertions that he thought the Rental Housing Act applied only to the conversion of apartments into condominiums. The applicable statute is far from clear, and Birkel's interpretation of the statute is a reasonable one (although in error).

9. This Court has previously held that the Halley Terrace complex contains five or more units, and that if plaintiffs wished to purchase the complex, they must purchase the complex in its entirety, rather than purchase one or two buildings, or units within buildings, individually. *Redmond v. Birkel,* 797 F.Supp. 36, 38–39 (D.D.C.1992).

can conduct with the owner the negotiations required by § 45–1634 and the other applicable provisions of the Act.

*Id.* at 245. While plaintiff certainly should not have been expected to anticipate a sale of the property and form a tenant organization in advance of the sale, in order for plaintiff to claim she has lost the opportunity to purchase the complex, plaintiff must submit something to show that, if defendants had not concealed the sale: (1) the Halley Terrace tenants would have formed a tenant organization; (2) they would have registered their organization with the mayor, as required by the Rental Housing Act, and (3) they would have engaged in negotiations with Birkel to purchase the property, including securing financing and the like.[10]

Plaintiff has not made any statements to this effect, nor has she submitted any affidavits from other Halley Terrace tenants as to their willingness to form a tenant organization and purchase the property, had it been offered to them for sale.[11] Instead, plaintiff asserts that she herself has lost the opportunity to purchase the property, and that in losing that opportunity, she has been injured. *See* Pl.'s Opp. at 11 (rejection of Mary Bailey's 1992 offer "does not establish that Ms. Redmond would not have purchased the Apartments [in 1986]"); 12; 16 ("assuming

*arguendo* that Ms. Redmond could recover damages . . . only by proving that she would have bought the Apartments . . ."); 17 ("Ms. Redmond was not interested in matching the sales price . . ."). *See also* Pl.'s Opp., Ex. 6, at 6 ("I was not given an opportunity to purchase and was denied the first right of refusal"); 7 (noting that, since 1988, she "has applied for and [has had] approved financing for the purchase of a private home in the District of Columbia"). But plaintiff alone has no right to buy the property in the first place; unless she can show, by affidavit or otherwise, that she and other tenants would have formed a tenant organization, registered it with the mayor, and engaged in negotiations with Birkel for the purchase of the property, she has lost nothing. She has not made this showing.[12]

Accordingly, the Court will grant summary judgment for defendants on Counts II and III of plaintiff's amended complaint, and this eight-year-old case thus draws to a close.

10. In its 1992 opinion, the Court held that the requirement of § 45–1640 did not deprive the plaintiffs of standing to sue defendants under the Rental Housing Act for their failure to provide notice of the impending sale. *Redmond,* 797 F.Supp. at 39. To have held otherwise would mean that owners of apartment buildings with no organized tenant group could sell apartments, or demolish them, or retake possession of them, without giving the tenants notice or an opportunity to buy the complex, since no individual tenants would thereafter have standing to contest the lack of notice.

Now, where plaintiff is alleging that she has been injured by losing the opportunity to buy Halley Terrace, the requirement that tenants form an organization to negotiate purchase of the complex again becomes relevant. Although plaintiff has standing to bring this action for violation of the Rental Housing Act, she cannot allege that she has lost the opportunity to purchase the complex, since the law provides her no such opportunity. And she has not provided any evidence (much less evidence rising to the "clear and convincing" standard necessary to establish each element of a fraud claim) that she and her

fellow tenants would have taken the steps necessary under § 1640 to purchase the apartment complex.

11. While plaintiffs' financial capacity (and thus, their ability to purchase the Halley Terrace properties) was not relevant to the issue of prior notice under the Rental Housing Act, 797 F.Supp. at 39, their ability to purchase the property, assuming that the necessary preconditions of a forming a tenant organization and registering the organization with the mayor were met, is relevant to the issue whether plaintiff Redmond suffered injury due to defendants' failing to give notice of the sale of the property. (Put in this light, plaintiff's complaint fails not because of lack of injury *per se,* but for lack of causation.)

12. Plaintiff occasionally makes vague references to other tenants purchasing the apartment "themselves," *see* Pl.'s Opp., Ex. 6, at 2, but plaintiff has submitted no affidavits from other Halley Terrace tenants (or from herself) that the tenants would, if they had received proper notice of the sale, have taken all the necessary steps to secure a contract of sale with the Birkels.