**Brenda L. ZANDERS, Appellant,**

v.

**Joseph C. REID, Richard Baker, and Shirley Baker, Appellees.**

**No. 06–CV–1384.**

District of Columbia Court of Appeals.

Argued Jan. 14, 2009.
Decided Sept. 17, 2009.

---

John F. Pressley, Jr., Washington, for appellant.

G. Vann Canada, Jr., with whom Bradford S. Bernstein, Rockville, MD, was on the brief, for appellees Richard Baker and Shirley Baker.*

Before WASHINGTON, Chief Judge, GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges.

GLICKMAN, Associate Judge:

Brenda Zanders sued Joseph Reid for breaking his promise to sell her the house in which she was living as his tenant and for violating her statutory right of first refusal by selling the house to Richard and Shirley Baker, and she sued the Bakers for interfering with her right to acquire the house by purchasing it themselves. The trial court struck all of Zanders's claims against the Bakers because she had failed to make rent payments into the court's registry as required by a protective order in a suit for possession they had filed against her in the Superior Court's Landlord and Tenant Branch. At trial, after the close of evidence, the court granted judgment as a matter of law to Reid on Zanders's claims of breach of contract and promissory estoppel, leaving only her statutory claim to go the jury. After the jury found for Zanders on that claim and awarded her $210,000 in damages, the court denied Zanders's motion to enforce the award on the ground that the statute did not authorize it. We conclude that each of these three rulings was error necessitating reversal.

## I.

Viewing the evidence (much of which is not disputed) in the light most favorable to Zanders,[1] it appears that in 1997, while she

---

* No appearance was entered for appellee Reid, nor was a brief filed on his behalf.

1. See note 9, *infra.*

and Joseph Reid were still maintaining their long-term romantic relationship, Zanders wanted to purchase a rowhouse located at 311 T Street, Northwest. She was unable to obtain a mortgage in her own name, however, because her credit was poor. To help her out, Reid agreed to an arrangement whereby he would obtain the mortgage for her in his name. The 1997 agreement between Zanders and Reid was an oral one, and never committed to writing, but Reid subsequently acknowledged it at trial. According to their agreement, Zanders would pay part of the down payment and make all the mortgage payments herself. She also committed to quit her job, return to school, and achieve a better credit rating within three years. After three years, the parties contemplated, Zanders would be able to obtain a mortgage in her own name, and Reid would transfer title to the house to her. (Reid agreed to add her name to the deed when he purchased the house, but that was never done.) If Zanders did not obtain financing at the end of the three years, it was agreed, Reid would sell the house and Zanders would receive the proceeds.

Pursuant to these arrangements, Reid secured the necessary mortgage and purchased the 311 T Street property, and Zanders moved into the house in October 1997. Zanders paid $11,500 of the $13,000 down payment. The mortgage was for approximately $106,000, of which $26,000 was designated to be used to renovate the premises. That amount proved insufficient for the extensive renovations needed, so in April 1998 Reid took out an additional mortgage, raising the total indebtedness to approximately $129,000. While the second mortgage was intended to cover construction costs, Zanders did not receive the money. Instead, Reid used it to recoup his share of the original down payment and to repay some debts. After the second mortgage, the monthly mortgage payment increased to $1,283. In addition to

making those monthly payments, Zanders spent her own money on renovations.

In October 2000, when the three years were up, Zanders called Reid. By this time their romantic relationship had ended. Zanders, who had not been able to obtain a mortgage, thanked Reid for not selling the property. In response, Reid accused her of having "no integrity" (apparently for failing to secure financing) and told her that "the time had passed" for her to exercise her option under the original agreement. Nonetheless, Zanders continued living at the property and making the mortgage payments.

In June 2001, Reid took out a third mortgage on the property, raising the total indebtedness to $191,000. The nominal purpose of this third mortgage was to pay for repairing the house's sinking kitchen, but Reid allegedly kept all the proceeds and did not make the repairs. Reid was supposed to make the additional monthly mortgage payment of $560 himself. His payments often were late, resulting in sizable late fees.

At some point in the Spring of 2001, Zanders met with Reid to discuss the second refinancing. In the course of their meeting, Zanders later claimed, Reid agreed to give her an additional three years, i.e., until 2004, to obtain a mortgage in her name for the property, in which case he would transfer it to her in accordance with their original agreement. (Reid denied having made such an agreement.) Following their meeting, Zanders continued to reside in the house and to pay down the mortgage. Around October 2002, Zanders took over making the payments on the third mortgage that Reid had taken out. In 2003, she paid the property taxes to prevent the house from being sold at a tax sale after Reid refused to pay the taxes. Zanders also shouldered the costs of renovation and "general maintenance"

after her 2001 meeting with Reid, including the expensive repair of the kitchen.

In June 2004, Zanders, believing herself able to secure the necessary financing, offered to purchase the house from Reid for $190,000. Reid rejected that offer, however, and demanded that Zanders pay $300,000. (The market value of the house had appreciated.) Zanders refused.

Reid then entered into a conditional agreement with his friends Richard and Shirley Baker to sell them the property for $350,000. To comply with the Tenant Opportunity to Purchase Act ("TOPA"),[2] Reid notified Zanders of her tenant's right of first refusal.[3] Despite Zanders's attempt to exercise that right, however, Reid sold the property to the Bakers for the agreed-upon price of $350,000. After the sale, Zanders continued to live in the premises.

## II.

Two lawsuits ensued in Superior Court. First, in October 2004, Zanders filed a complaint (the "Civil Action") against both Reid and the Bakers. As later amended, the complaint alleged causes of action for breach of contract, promissory estoppel, fraud, interference with contractual relations, interference with business expectancy, and violation of Zanders's right of first refusal under TOPA. It sought monetary and equitable relief, including specific performance and the imposition of a "resulting" or "constructive" trust, against Reid and the Bakers.

Thereafter, in January 2005, the Bakers filed an action against Zanders in the Landlord and Tenant Branch (the "L&T Action"), seeking to evict her for non-payment of rent. In March 2005, a protective order was entered in the L&T Action directing Zanders to pay rent into the regis-

try of the court. Shortly thereafter, the L&T Action was consolidated with the Civil Action. Several months later, Zanders ceased making the rent payments required by the protective order.

### A. Dismissal of Zanders's Claims Against the Bakers

■ Prior to the start of trial, the Bakers moved to strike Zanders's pleadings against them and for the entry of judgment in their favor in both the L&T Action and the Civil Action because of Zanders's failure to make the rent payments required by the protective order in the L&T Action. The trial court granted the motion in its entirety. In the same order, the court struck all of Zanders's claims against the Bakers, granted possession to the Bakers, and entered final judgment in their favor in both actions. The court denied Zanders's motion for reconsideration. It explained its rulings as follows:

> To the extent that [Zanders] violated ... willfully and intentionally the protective order and had no justification for her failure to comply [with] the protective order for over a year, ... she cannot invoke the equitable jurisdiction of the court. In [the court's] view, all of her claims against the Bakers and defenses should be stricken.

Zanders argues that the court erred in throwing out her claims in the Civil Action. We agree.

■ In the Civil Action, Zanders charged the Bakers with fraud and tortious interference with her contractual right to purchase her home from Reid, and she sought monetary damages as well as equitable relief. The trial court's "unclean hands" rationale for striking those causes of action is flawed in two respects: the

---

2. Title IV of the Rental Housing Conversion and Sale Act of 1980, D.C.Code § 42–3404.02 *et seq.* (2001).

3. *See* D.C.Code §§ 42–3404.08, –3404.09 (2001).

equitable doctrine known as "unclean hands" is inapplicable to a legal claim for money,[4] and it operates only where the plaintiff's misconduct occurred in connection with the same transaction that is the subject of her claim.[5] Moreover, our cases make clear that the court lacked grounds to strike Zanders's pleadings in her Civil Action against the Bakers merely because she had violated the protective order in the L&T Action. We have upheld the striking of a tenant's pleadings in a *landlord and tenant action* for failure of the tenant to make the payments required by a protective order. In those cases, however, the issue raised by the pleadings was merely the landlord's right to possession. The purpose of striking the tenant's pleadings is to provide the landlord with possession of the premises and to end the landlord-tenant relationship because the tenant is not paying the court-ordered rent. Thus, in approving the striking of the tenant's pleadings, we have explained that

> while the striking of . . . pleadings would result in the termination of the tenancy, it would not otherwise foreclose the tenant's rights. . . . The tenant remains free to sue . . . for breach of contract in the Civil Division of this Court. . . . Indeed, in a civil action based on breach of contract, the tenant may litigate claims not cognizable in the Landlord and Tenant Branch, in which only those breaches by the landlord which constitute housing code violations may be asserted. The striking of [a t]enant's pleadings will affect the tenant only insofar as it precludes the tenant from continuing to live in an apartment at which she or he is demonstrably unable to pay the rent.[6]

In a later case, we reiterated the key point:

> The sanction [of striking a tenant's pleadings for failure to comply with a protective order] is not an adjudication of the validity of a particular rent amount but rather a mechanism for the court to enforce its order. Judgment for possession based on non-payment of a protective order does not have collateral estoppel effect. . . . [T]he remedy [of striking the tenant's pleadings] does not otherwise foreclose the tenant's rights. . . . The tenant remains free to sue under any civil theory available to him.[7]

Thus, while the trial court was justified in entering judgment for possession in the L&T Action, we see no justification for striking Zanders's pleadings and granting judgment to the Bakers in the Civil Action. Her claims against the Bakers must be reinstated.

## B. The Grant of Judgment as a Matter of Law to Reid

The court permitted Zanders to proceed to trial only against Reid, and only on her claims of breach of contract, promissory estoppel, and violation of her TOPA right of first refusal. (Zanders's tortious interference claims were asserted only against the Bakers.) It is not clear from the record why the court dismissed Zanders's fraud claim against Reid as well as against the Bakers, but Zanders does not challenge that dismissal on appeal.

■ The court also ruled that because the Bakers had obtained possession of the

---

4. *In re Estate of Barnes,* 754 A.2d 284, 288 n. 6 (D.C.2000).

5. *See, e.g., Feaster v. Vance,* 832 A.2d 1277, 1289 (D.C.2003) (quoting *International Tours & Travel, Inc. v. Khalil,* 491 A.2d 1149, 1155 (D.C.1985)).

6. *Mahdi v. Poretsky Mgmt., Inc.,* 433 A.2d 1085, 1089–90 (D.C.1981) (citations and brackets omitted).

7. *Mullin v. N St. Follies Ltd. P'ship,* 712 A.2d 487, 493–94 (D.C.1998) (citations, brackets and quotation marks omitted).

house, Zanders could not seek the imposition of a resulting trust or a constructive trust in connection with her remaining claims against Reid. We agree with Zanders that this preclusive ruling was erroneous, inasmuch as she had a potential claim for the imposition of a constructive trust on any property that Reid may have acquired using the proceeds of his sale of the house to the Bakers.[8] As a result of the ruling, Zanders did not have the opportunity to explore at trial whether any such property existed. The claim for a constructive trust on Reid's property may be revived in the proceedings against him that will be required on remand.

■ After the close of evidence at trial, the court granted judgment as a matter of law to Reid on Zanders's breach of contract and promissory estoppel claims (leaving only her TOPA claim to go to the jury). Because the court based its ruling on a misapprehension of the evidence, and a reasonable jury could have found in Zanders's favor on her breach of contract and promissory estoppel claims,[9] we agree with Zanders's contention that the court committed reversible error.

At trial, Zanders and Reid agreed that they had entered into a three-year oral agreement covering the period 1997–2000. They disagreed over whether, in 2001, Reid again agreed to give Zanders three years—i.e., to 2004—to obtain a mortgage and purchase the house from him.

The trial court's award of judgment as a matter of law resulted from its misunderstanding of this chronology. It stated that even if two oral agreements existed from 1997–2000 and from 2000–2003, respectively, Zanders's attempt to purchase the house in June 2004 was untimely. However, the putative second agreement did not cover the period 2000–2003, but rather the period 2001–2004, and if that agreement existed, Zanders's attempt to purchase the house was arguably timely under its terms. The issue thus was not susceptible to resolution against her as a matter of law.

The Bakers argue that Reid was entitled to judgment as a matter of law for a different reason (which the trial court did not rely on or address)-namely, that the oral agreement Zanders claimed was made in the Spring of 2001 did not satisfy the statute of frauds (a defense Reid raised).[10] We are not prepared to uphold the trial court's ruling on this ground.[11] Oral agreements are exempt from the operation of the statute of frauds where a party's part performance shows "unequivocal evidence of the alleged agreement,"[12] or where the plaintiff has justifiably relied on the oral agreement to her detriment.[13]

---

8. *See Heck v. Adamson,* 941 A.2d 1028 (D.C. 2008).

9. "Judgment as a matter of law may be granted only if, viewing the evidence in the light most favorable to the opposing party, there is 'no legally sufficient evidentiary basis for a reasonable jury to find' for the non-moving party." *Railan v. Katyal,* 766 A.2d 998, 1006 (D.C.2001) (quoting Super. Ct. Civ. R. 50).

10. In pertinent part, the statute of frauds provides that "[a]n action may not be brought ... upon a contract or sale of real estate, [or] of any interest in or concerning it, ... unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing...." D.C.Code § 28–3502 (2001).

11. Appellees did not raise the statute of frauds as an alternative basis for upholding the trial court's ruling until oral argument. Ordinarily, we will not consider arguments raised for the first time at oral argument. *Ramos v. United States,* 569 A.2d 158, 162 n. 5 (D.C. 1990).

12. *In re Estate of Reilly,* 933 A.2d 830, 839 (D.C.2007) (quoting *Hackes v. Hackes,* 446 A.2d 396, 401 n. 9 (D.C.1982)).

13. *See Landow v. Georgetown–Inland West Corp.,* 454 A.2d 310, 313–14 (D.C.1982).

We think a jury reasonably could find that Zanders's payment of the mortgage and property taxes and her maintenance and renovation of the premises in the years following her Spring 2001 meeting with Reid constituted sufficient part performance or detrimental reliance to overcome Reid's statute of frauds defense.

## C. Rulings With Respect to Zanders's Remedy Under TOPA

■ The trial court instructed the jury to determine and award monetary damages if it found Reid liable to Zanders for violating her right of first refusal under TOPA. In so doing, the court disagreed with Zanders's argument that "the proper remedy" for a violation of TOPA is specific performance rather than a monetary award. The jury returned a verdict in Zanders's favor and awarded her $210,000 in damages. Subsequently, however, the court denied Zanders's motion to enforce the award on the ground that its "review of the case law demonstrates that the Act does not provide for monetary damages." The court also refused Zanders's request to set aside the sale of the house. In effect, therefore, Zanders was deprived of any relief for the TOPA violation that the jury found (though the court did order Reid to pay her costs and attorney's fees).

She appeals the court's order. We reverse it, in part.

■ The trial court's interpretation of TOPA presents a pure question of law, which we consider de novo. The relevant statutory provision states:

> An aggrieved ... tenant ... may seek enforcement of any right or provision under this chapter through a civil action in law or equity, and, upon prevailing, may seek an award of costs and reasonable attorneys fees.[14]

That a tenant may seek to enforce her TOPA rights by an action "in law or equity" signifies that she may seek monetary damages in lieu of specific performance.[15] Accordingly, we hold that the trial court wrongly refused to enforce the jury's monetary award.[16]

■ We do not agree with Zanders, however, that the trial court should have set aside the sale to the Bakers and ordered specific performance of the sale to her. A court has discretion to grant such equitable relief in an action by the tenant against a third party purchaser if the tenant establishes that the third party had actual or constructive knowledge of the tenant's superior rights at the time it acquired the property (i.e., the third party was not a bona fide purchaser).[17] But that

---

14. D.C.Code § 42–3405.03.

15. *See, e.g., Flack v. Laster*, 417 A.2d 393, 400 (D.C.1980) ("Specific performance is a purely equitable remedy [which] is ordered when the legal remedy, usually money damages, is deemed to be either inadequate or impracticable."); *Clay v. Faison*, 583 A.2d 1388, 1391–92 (D.C.1990) (noting that legal remedy is "usually damages" while equitable remedy in contract dispute is specific performance). Thus, we are not persuaded by the district court's conclusion in *Redmond v. Birkel*, 797 F.Supp. 36, 39–40 (D.D.C.1992), that "[n]othing in [D.C.Code § 42–3405.03.] suggests that plaintiffs can collect damages." In our view,

nothing in the statute suggests plaintiffs cannot collect damages.

16. The Bakers argue that Zanders was not actually Reid's tenant. The jury found she was, and we see no reason to disturb its resolution of the facts.

17. *Wilson Courts Tenants Ass'n, Inc. v. 523–525 Mellon St., LLC*, 924 A.2d 289, 295 (D.C. 2007); *see also* D.C.Code § 42–3404.04 ("The right of a third party to purchase an accommodation is conditional upon exercise of tenant rights under this subchapter.... Third party purchasers are presumed to act with full knowledge of tenant rights and public policy under this subchapter.").

fact was not established in this case. To begin with, Zanders did not join the Bakers as defendants in her TOPA claim, and because the court struck Zanders's other claims against them, she and the Bakers did not litigate the bona fides of their purchase of the property from Reid at trial. On remand, in connection with the reinstatement of her suit against the Bakers, Zanders may seek to add a TOPA claim against them as alleged non-bona fide purchasers, assuming the claim is not time-barred and the amendment is not otherwise properly precluded.[18] On this record, though, the trial court did not abuse its discretion in refusing to order specific performance.

### III.

We reverse the judgments in favor of the Bakers and Reid in the Civil Action and remand for further proceedings consistent with this opinion, including reinstatement of Zanders's complaint against the Bakers and her breach of contract and promissory estoppel claims against Reid. (It has not been argued to us that Zanders's victory on her TOPA claim renders her other claims against Reid moot.) Zanders is entitled to enforcement of the jury's award of monetary damages against Reid, as well as to the court's consideration of her request for equitable relief (a constructive trust) against him.