6 A.3d 372

**Sean PORTER**

v.

**Donna ZUROMSKI.**

**No. 369, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Oct. 4, 2010.

362

William M. Ferris (Krause & Ferris, on the brief), Annapolis, for appellant.

Alan W. Bernstein (Bernstein & Feldman, on the brief), Annapolis, for appellee.

Panel: ZARNOCH, WRIGHT and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

ZARNOCH, J.

Is this, as appellant contends, "nothing more than a palimony case," or is it, as appellee argues, unjust enrichment of one partner in an unmarried relationship at the expense of the other, justifying the imposition of an implied trust? After a February 2009 bench trial, Anne Arundel County Circuit Judge Michele Jaklitsch sided with appellee/plaintiff Donna Zuromski, and against appellant/defendant, Sean Porter. This appeal of the circuit court's decision calls upon us to address, for the first time, property rights issues oft-litigated in other jurisdictions. *See* Annot., *Property Rights Arising From Relationship of Couple Cohabiting Without Marriage*, 69 A.L.R.5th 219 (1999, 2010 Supp.) *("Cohabitation–Property Rights ")*. For reasons set forth below, we affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

This is a dispute over real property located on Washington Avenue in Shady Side, Maryland. In her March 31, 2007 Memorandum Opinion, the trial judge summarized the relevant facts in this case:

The parties were romantically involved from 1993 though June 2007. They became engaged to be married in 1995, but postponed their wedding after Plaintiff's brother was injured in an accident in 1996. The parties lived with Plaintiff's mother in Fort Washington, Maryland, for approximately three years, during which time Defendant assisted around the house and in caring for Plaintiff's brother, and Plaintiff paid the rent of $600 each month to allow Defendant to save money for the parties. Defendant deposited his savings into a joint checking account held in both parties' names.

In 1997, the parties decided to purchase a home together. Defendant found a house, and in February 1998, the parties

applied for a mortgage loan together at Severn Savings Bank to finance the purchase. Because of Plaintiff's credit score and impending bankruptcy filing (filed in May 1999), the parties were unable to qualify for a loan jointly. The parties then agreed that Defendant would apply for a mortgage loan again, this time in his name only. Defendant paid a down payment of $4500 from the parties' joint checking account, and Plaintiff paid Defendant $3700 for her contribution toward the down payment. The parties agreed that although Plaintiff could not qualify for a mortgage, the parties would act as joint owners of the property and Plaintiff would pay Defendant one half the mortgage expenses, and one half of all other property expenses each month.[1] The parties never had an agreement that Plaintiff would be a tenant; rather, they agreed that she was to be a joint owner. The parties agreed that Defendant's name would appear on the deed, but he would hold the property for both parties.[2] Defendant promised Plaintiff that in the future he would put Plaintiff's name on the deed and that the property would be held in joint tenancy.

The parties made significant improvements to the house, with each of them working extensively to the best of their capabilities, and with the help of friends of both parties. Plaintiff's mother's friend, Allen Keller, installed the HVAC system with the understanding that the house was to be jointly owned by both Plaintiff and Defendant. Defendant's friends installed drywall and other improvements.

Plaintiff paid one half of all mortgage, construction loan, utility, and other expense payments on the property until the parties' relationship deteriorated in mid–2007.[3] In

---

1. This agreement was never reduced to writing.

2. Zuromski testified that in 2003 Porter again said he would put her name on the deed.

3. Zuromski also testified that when Porter received his income tax refund, the money went back into the house or they split the tax benefits from the house "50–50".

January 2007, the parties ended their engagement, but the parties stayed together as a couple and Plaintiff continued making mortgage and home expense payments to Defendant. In May 2007, Defendant moved out of the parties' shared bedroom in the house. In July 2007, on the termination of their romantic relationship, Defendant ordered Plaintiff to vacate the property. Defendant refused the Plaintiff's request to divide the equity in the home, and he instituted a refinancing on the property which stripped a substantial portion of the equity out of the property.[4]

On October 18, 2007, Zuromski filed a six-count complaint in the circuit court, asserting that Porter's actions: 1) warranted imposition of a constructive trust; 2) required the establishment of a resulting trust; 3) unjustly enriched Porter; 4) constituted a promissory estoppel; 5) required entry of a declaratory judgment declaring that Zuromski was entitled to one-half ownership of the property; and 6) mandated injunctive relief.[5] Porter answered and denied liability.

In February 2009, a two-day trial was held. The following month, the trial judge issued a memorandum opinion and order. The court found that Zuromski had "established the existence of a constructive trust as an equitable remedy for unjust enrichment." It emphasized that in cases where only one party holds title, a constructive trust should be imposed, not only where fraud or misrepresentation exists, but also "when the circumstances render it inequitable for the party

---

4. Porter takes issue with some of the trial court's factual findings. He points to his testimony that he told Zuromski he would "put [her] on the home," but he said that just "to stop her from crying"; that, when he moved in with appellee's mother, it was just to help his injured friend; and that when appellee filed for bankruptcy in 1999, she claimed no interest in the property. The court obviously discounted Porter's account with respect to the first two points. The third point was specifically addressed by the trial judge, who noted that appellee's name was not on the title when she filed for bankruptcy.

5. Some of the counts sought monetary relief. However, the two trust counts sought identical relief: issuance of an order directing Porter to convey one-half interest in the property to Zuromski and the appointment of a trustee to convey that interest.

holding the title to retain it." The court said that this standard was satisfied in this case.[6]

The circuit court also found an additional basis for imposing a constructive trust. Porter, as holder of legal title to the property, was the dominant party in a confidential relationship.[7]

Finally, the court said that, even absent a confidential relationship between the parties, it would find a constructive trust on the basis of unjust enrichment. As a result, the court declared that the parties each had an "undivided one half interest in the subject property as tenants in common." It denied any specific monetary award, an injunction, and other

---

**6.** In her opinion, the trial judge said:

The testimony at trial in this case establishes the existence of a constructive trust based on equitable principles. Plaintiff conferred a benefit upon Defendant as she paid for one half of the expenses of the home they shared. The parties had been seeking to purchase a home for some time and had established a joint bank account to fund the down payment. Defendant used the funds in the joint account to purchase the property in his name only. Both parties intended to share equally the home in which they lived. At the time of the settlement, the parties agreed that Defendant would place Plaintiff's name on the deed in the future. Based on the assumption that she would be a title holder, Plaintiff spent numerous hours working to make improvements upon what she believed was their joint residence. She spent money on furniture and other items for the home based on an understanding that she was an owner of the home. She reimbursed Defendant for one half of each month's mortgage payment and one half of all other expenses. Defendant willingly accepted these benefits.

**7.** Specifically, the court found:

The parties' testimony indicates that Plaintiff and Defendant were engaged in an intimate romantic relationship and were planning marriage. Defendant purported to act in Plaintiff's best interests when he discussed placing her name on the deed in the future. The parties' sexual relationship was not the sole consideration for this agreement. Plaintiff had no reason to believe that Defendant may be motivated by anything other than his feelings for her and interest in a financially secure future together. Under the circumstances, Plaintiff was "justified in assuming" that Defendant would act in her best interest and that a written agreement establishing the joint tenancy was not required.... As such, this Court finds that a confidential relationship did exist between Defendant and Plaintiff.

claimed relief, but did not expressly address the resulting trust claim.[8] The court declared that each party had an undivided interest in the property and appointed a trustee to transfer title and to cause a new deed to be prepared reflecting joint ownership. This appeal followed.[9]

## QUESTIONS PRESENTED

Porter has raised a single issue in this appeal:

On the facts of this case, did the trial judge commit reversible error by imposing a constructive trust on real property owned by Appellant and appointing a Trustee to transfer title to the same?

Zuromski has raised an alternative ground for upholding the judgment in the circuit court, which we have phrased as the following question:

Was there sufficient evidence before the trial court to support the imposition of a resulting trust? [10]

## DISCUSSION

### 1. Constructive Trust

A constructive trust is a remedy that converts the holder of legal title to property into a trustee for one who in good conscience should reap the benefits of the property. *Wimmer v. Wimmer*, 287 Md. 663, 668, 414 A.2d 1254 (1980). Its purpose is to prevent the unjust enrichment of the holder of the property. *Id.* This remedy applies "where a property has been acquired by fraud, misrepresentation, or other improper method, or where the circumstances render it inequita-

---

**8.** Of course, the court was under no obligation to address the issue in light of the fact that the constructive trust count sought the identical relief pursued under the resulting trust theory. *See* n. 4, *supra*.

**9.** Initially, Zuromski cross-appealed, but later, in this Court, withdrew her appeal.

**10.** A constructive trust and a resulting trust are both implied trusts. *Jahnigen v. Smith*, 143 Md.App. 547, 557–58, 795 A.2d 234 (2002).

ble for the party holding the title to retain it." [11] *Id.* Ordinarily, such factors must be shown by clear and convincing evidence. *Id.* However, this rule changes, "[o]nce a confidential relationship is shown. *Id.*[12] Then, a presumption arises that confidence was placed in the dominant party and that the transaction complained of resulted from fraud or undue influence and superiority or abuse of the confidential relationship by which the dominant party profited." *Id.* at 669, 414 A.2d 1254. This presumption shifts the burden to the defendant to show the fairness and reasonableness of the transaction. *Id.* Of course, our review of whether the trial judge's findings of fact on these points are supported in the record is governed by the clearly erroneous rule. *See* Md. Rule 8–131(c) (Appellate court "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.").

### A. Fraud

At the outset, Porter challenges some of these principles that guided the circuit court's decision. He particularly takes aim at the trial court's reliance on *Hartsock v. Strong, supra,* 21 Md.App. at 116, 318 A.2d 237, for the proposition that a constructive trust may arise from some equitable principle independent of fraud. He suggests that *Hartsock* may have been weakened by our decision in *Jahnigen v. Smith,* 143 Md.App. 547, 795 A.2d 234 (2002), where, at one point in our opinion, we noted: "[T]he facts as presented do not support an action for constructive trust because there has

---

**11.** In *Hartsock v. Strong,* 21 Md.App. 110, 118, 318 A.2d 237 (1974), we observed: "It is enough that the 'conscience' of a court of equity would be traumatized if the legal title holder were allowed to deprive the beneficial owner of that which in good conscience belongs to the beneficial owner."

**12.** A confidential relationship exists "where one party is under the domination of another or where, under the circumstances, such party is justified in assuming that the other will not act in a manner inconsistent with his or her welfare." *Bass v. Smith,* 189 Md. 461, 469, 56 A.2d 800 (1948).

been no allegation of misrepresentation, fraud, or other improper methods of obtaining title." *Id.* at 557, 795 A.2d 234. However, *Jahnigen* flatly states that, in addition to fraud and these other grounds, a constructive trust may be found "where the circumstances render it inequitable for the party holding title to retain it." *Id.* at 556, 795 A.2d 234. Moreover, just six months after *Jahnigen* was decided, we once again restated the principles governing imposition of a constructive trust, noting that the remedy could be invoked for inequitable circumstances independent of fraud. *Turner v. Turner,* 147 Md.App. 350, 421–22, 809 A.2d 18 (2002).[13]

Porter also contends that *Wimmer* undercuts the circuit court decision here. In *Wimmer,* the Court of Appeals overturned the imposition of a constructive trust upon a one-half interest in a marital home purchased with the husband's funds and titled in his name. In rejecting the wife's claim, the Court emphasized that the wife parted with no money or labor with respect to the property and thus, the title holder was not unjustly enriched. *Wimmer,* 287 Md. at 672, 414 A.2d 1254. The very facts found missing in *Wimmer* are present here. To be sure, the *Wimmer* court also noted that the husband made no misrepresentations as to the title to the property. *Id.* at 671, 414 A.2d 1254. But *Wimmer* is clearly not a case of absence-of-fraud equals no-claim. It is one "where the circumstances [did not] render it inequitable for the party holding the title to retain it," *id.* at 668, 414 A.2d 1254, because he was not unjustly enriched at the expense of the plaintiff. Thus, nothing in *Wimmer* suggests that Zuromski would have to make a showing of fraud in order to prevail here.

---

**13.** Leading authorities also fail to support Porter's contention. *See* Dobbs, *Law of Remedies* (1993) at § 4.3(2) ("Sometimes it is still said that the constructive trust applies only to misdealings by fiduciaries or in cases of fraud. But this is a misconception."); and *Restatement of the Law Second, Restitution* (Tentative Draft No. 2, Apr. 1984), Reporter's Note at § 30 ("Sometimes it is said that a constructive trust can be predicated only on a fiduciary relationship or on an actual fraud ... Such expressions are to be rejected as stating the grounds for the remedy too narrowly.").

## B. Palimony

Porter denigrates Zuromski's constructive trust claim as a palimony action not recognized in this State. This argument is misplaced here. The appellee was not seeking "alimony from or for a pal." *See Attorney Grievance Commission v. Ficker,* 319 Md. 305, 320, 572 A.2d 501 (1990).[14] Nor was her lawsuit an action for support. *See* Annot. *"Palimony" Actions for Support Following Termination of Nonmarital Relationships,* 21 A.L.R.6th 351 (2005, 2010 Supp.). It was not "based on" promises or commitments to marriage, *see Miller v. Ratner,* 114 Md.App. 18, 50, 688 A.2d 976 (1997),[15] or predicated upon meretricious sexual services. *Ficker,* 319 Md. at 319, 572 A.2d 501; *Baxter v. Wilburn,* 172 Md. 160, 162–63, 190 A. 773 (1937).[16] Rather, Zuromski's claim arises from her financial contributions to the property and the unjust enrichment that would consequently occur if Porter retained sole title to the house.

## C. Joint Banking Account

Porter contends that "[a] key element of Appellee's case and the trial court's decision was that the parties established a joint bank account into which Appellant deposited virtually all of the funds while Appellee used her money to pay rent to her mother, in whose house the parties were living." He goes on to argue that "[t]he law is that no gift of Appellant's funds to the Appellee was complete until she withdrew them from that

---

**14.** *Ficker* discusses the many permutations of the term "palimony." 319 Md. at 318–22, 572 A.2d 501.

**15.** However, as discussed *infra* at 374–75, 6 A.3d at 380, the engagement of the parties in this case is relevant to whether a confidential relationship exists for constructive trust purposes.

**16.** *Baxter* notes, 172 Md. at 162–63, 190 A. 773:

[T]he mere fact that a man and a woman are living together in an unlawful relation does not disable them from making an enforceable contract with each other, if it has no reference to continuation of the relation, or is only incidentally connected with it, and may be supported independently of it.

joint account, which she did not do, and that, to the extent Appellant may have withdrawn any funds she had deposited into that account, a gift from her to him was completed at that time."

A fair reading of the trial court's opinion does not support the contention that the joint banking account for the house was a "key element" of the decision to impose a constructive trust. What was critical was that Zuromski made substantial financial contributions toward the purchase of the house and paid half of the mortgage charges and other home expenses.

This is not a case where one party to a joint banking account claims an interest in property purchased with funds withdrawn solely by the other account holder, exclusively for his own purposes. *See Hamilton v. Caplan,* 69 Md.App. 566, 586, 518 A.2d 1087 (1987). Nor does Zuromski assert that Porter's withdrawal of funds from the account were improper. *See Kornmann v. Safe Deposit & Trust Co.,* 180 Md. 270, 23 A.2d 692 (1942). Rather, when the Shady Side property was purchased in 1999, both parties drew checks on the account to pay the down payment: Porter's was payable to the lender and Zuromski's was payable to Porter, apparently to be endorsed and paid over to the mortgage holder.[17] This record belies the contention that these withdrawals and others by Zuromski were gifts to Porter. On the contrary, she withdrew funds in accordance with the couple's plan to save money for a home, and their agreement to pay for it jointly—a factor that supports a finding of a constructive trust. *See* 76 Am. Jur.2d *Trusts, supra* at § 132 ("[A] constructive trust is independent of any agreement between the parties—although the existence of some agreement may serve as a factor in determining whether to impose a constructive trust ...").

---

**17.** In addition, to the downpayment on the house, Zuromski withdrew funds from the joint account to make rental payments for the couple from 1995–98. The checks in the record evidencing Zuromski's payment of her share of the mortgage bills, utilities and other expenses were drawn on a separate account.

## D. Appellant's Other Legal Objections

A volley of additional legal arguments from Porter's scatter-shot attack on the circuit court decision all miss their target. He contends that the trial court should not have ignored his testimony that he never intended that Zuromski have title to the property. However, a constructive trust is independent of any agreement between the parties. Restatement of the Law, *Restitution* at § 160 Comment b. ("A constructive trust is imposed not because of the intention of the parties but because the person holding the title to the property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property."); 76 Am.Jur.2d *Trusts* § 132 (2005) ("A constructive trust is independent of any agreement between the parties ...."). Even if the circuit court found Porter's testimony credible, it would have not called into question the trial judge's conclusion that, by operation of law, a constructive trust was required to be imposed.

Porter also asserts that the circuit court erred in granting Zuromski a one-half interest in the property, because she did not pay one-half of the purchase price of the Shady Side property. Although he cites a resulting trust case for this proposition, *Jahnigen*, 143 Md.App. at 558, 795 A.2d 234, a constructive trust decision, *Martin v. Farber*, 68 Md.App. 137, 147, 510 A.2d 608 (1986), states that a constructive trust cannot be imposed "over the entire estate without regard to the amounts actually contributed." It is true that the parties' contributions to the down payment were not equal. Nevertheless, the trial court did not focus, in myopic fashion, on the down payment for the purchase of the home. Among other items, the rent payments made by Zuromski that helped the couple to save for the purchase, and the court's finding that Porter "stripped a substantial portion of the equity out of the property," had to be factored into the equation. On this record, we find no error in the relief ordered by the trial court as a result of its imposition of a constructive trust.

Finally, Porter argues that Zuromski "committed fraud on her creditors and that she knew she had no right to the

property" when she claimed no interest in the property in her 1999 bankruptcy filing. In our view, whatever impact Zuromski's filing had on creditors is irrelevant to this case. But, in any event, the circuit court correctly concluded that Zuromski committed no impropriety because she was not listed on the title to the property when she filed for bankruptcy.

### E. Sufficiency of Evidence

■ Porter's question presented asks whether "[o]n the facts of this case" the trial court erred by imposing a constructive trust. In our view, the answer to this question is a resounding "no."

The evidence in this case clearly supports the imposition of a constructive trust. Porter testified that he told Zuromski he would put her on the title to the property, but privately he never really intended to do so. Such conduct smacks of misrepresentation if not fraud. But fraud need not be found here to uphold the circuit court's judgment. Zuromski's monetary and non-monetary investments in the property demonstrated that she clearly relied on Porter's representation that she would become co-owner of the house. In our view, these circumstances would render it inequitable for Porter to retain exclusive title and would justify imposition of a constructive trust.

On this record, the same result is reached if Porter's conduct is examined as an abuse of a confidential relationship. We think there is no doubt that a confidential relationship existed between the parties. This Court recently noted that, in the context of prenuptial agreements, while there is no presumption that spouses are in a confidential relationship, an engaged couple could occupy a confidential relationship. *Lasater v. Guttmann*, 194 Md.App. 431, 459, n. 19, 5 A.3d 79, 95 (2010). Out of state cases, more directly on point, also recognize that couples cohabitating or planning to marry can be parties to a confidential relationship, the breach of which can lead to imposition of a constructive trust on property. *See Hatton v. Meade*, 23 Mass.App.Ct. 356, 502 N.E.2d 552, 557

(1987); *Hudson v. DeLonjay,* 732 S.W.2d 922, 929 (Mo.App. 1987); *Rhue v. Rhue,* 189 N.C.App. 299, 658 S.E.2d 52, 59 (2008). *See generally Cohabitation–Property Rights, supra,* 69 A.L.R.5th at § 3.

Other factors support the finding of a confidential relationship here. Porter's sole name on the title made him a dominant party in the relationship and, by his representation that he would put Zuromski on the title, she was justified in assuming that Porter would not act inconsistent with her welfare. *See* n. 11 *supra.* Porter's attempt to profit from the relationship by solely retaining title to the property abused the confidential relationship, shifting the burden to him to show the fairness and reasonableness of his action. *See Wimmer, supra,* 287 Md. at 668, 414 A.2d 1254. On this record, he has failed to meet this burden and a constructive trust was justified.

## 2. Resulting Trust

■ In the alternative, Zuromski contends that the record before the trial court also supported the finding of a resulting trust. In *Jahnigen, supra,* 143 Md.App. at 558, 795 A.2d 234, we noted that "[w]here a transfer of property is made to one person, and only a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom said payment is made . . . ." A resulting trust has also been described in the following fashion:

Under compelling circumstances, courts may impose a resulting trust. A resulting trust is not a trust at all, but rather it is an equitable remedy designed to prevent unjust enrichment and to ensure that legal formalities do not frustrate the original intent of the transacting parties. Such a trust is implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises. Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his or her legal title

for the benefit of another, and there ordinarily being no fraud or constructive fraud involved.

76 Am.Jur.2d *Trusts* § 135.

■ One legal observer, seemingly predicting the scenario of this case, has said:

Resulting trusts, also known as purchase money resulting trusts, arise when one partner, intending the property bought to be for his or her benefit and not that of another, pays all or part of the purchase price but title is taken in the name of another.

Mary L. Bonauto, *Advising Non–Traditional Families,* 40 Boston Bar Journ. 10, 11 (Sept.–Oct. 1996). In a resulting trust, the intent of the parties that a trust relationship result is important. 76 Am.Jur.2d, *Trusts, supra* at § 132.

Some of the facts of this case raise the possibility of a resulting trust and courts in other jurisdictions—where circumstances required—have found a resulting trust where unmarried cohabitants were involved. *See Cohabitation–Property Rights, supra,* 69 A.L.R.5th at § 3. However, this is an issue the circuit court did not decide, and we need not decide it here. For all of the reasons set forth above, we affirm the circuit court's imposition of a constructive trust, its declaration that each party has an undivided interest in the property, and the appointment of a trustee to transfer title.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**