*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 16-CV-627, 16-CV-681, 16-CV-922 & 16-CV-1071

BRENDA L. ZANDERS, APPELLANT/CROSS APPELLEE,

v.

RICHARD BAKER, *ET AL.*, APPELLEES/CROSS APPELLANTS.

&

BRENDA L. ZANDERS, APPELLANT/CROSS APPELLEE,

v.

GORDON THOMAS, *ET AL.*, APPELLEES/CROSS APPELLANTS.

Appeals from the Superior Court
of the District of Columbia
(CAB-8373-04)

(Hon. John M. Mott, Trial Judge)

(Argued November 8, 2017                    Decided May 16, 2019)

*John F. Pressley, Jr.* for appellant/cross-appellee.

*G. Vann Canada, Jr.*, with whom *Bradford S. Bernstein* was on the brief, for appellees/cross-appellants Shirley and Richard Baker.

*Glenn W. D. Golding*, with whom *David H. Cox* was on the brief, for appellees/cross-appellants Gordon Thomas, *et al.*

Before BECKWITH and MCLEESE, *Associate Judges*, and WASHINGTON, *Senior Judge*.

BECKWITH, *Associate Judge*:  Brenda Zanders and Joseph Reid were in a romantic relationship when Mr. Reid bought a house for Ms. Zanders to reside in, fix up, and make mortgage payments on.  He agreed to sell Ms. Zanders the house in a few years, once she improved her financial standing.  At the three-year mark, their relationship had ended, but they nonetheless renewed the agreement for another term.  By the end of the second three-year period, Mr. Reid had taken out three mortgages on the property, and instead of selling the property to Ms. Zanders, Mr. Reid sold the property to Shirley and Richard Baker.  Ms. Zanders sued both Mr. Reid and the Bakers and, during the pendency of the first appeal, the Bakers sold the property to Tina Brower-Thomas and Gordon Thomas.  Ms. Zanders added the Thomases as defendants to her lawsuit on remand, where she ultimately failed to prevail on the majority of her claims.  All parties involved— Ms. Zanders, the Bakers, and the Thomases—appealed from the trial court's order on various grounds, but the thrust of the various issues now presented is whether Ms. Zanders should get title to the property or compensation from the Bakers and Thomases for depriving her of that title.  For the reasons discussed in this opinion, we reverse the trial court's order granting nominal damages for Ms. Zanders but in all other respects affirm.

## I.  Background

This case comes to us for the second time on appeal with a new host of arguments and a different set of parties.  As partially summarized in our first decision, *Zanders v. Reid*, 980 A.2d 1096 (D.C. 2009) (*Zanders I*), the relevant facts are as follows.  In 1997, Brenda Zanders wanted to purchase a property at 311 T Street, Northwest.  *Id.* at 1098–99.  Because she had a poor credit rating, Joseph Reid orally agreed to obtain a mortgage for her in his name and transfer title of the property to her in three years, once she had improved her credit sufficiently to obtain a mortgage in her own name.  *Id.* at 1099.  Ms. Zanders contributed to the down payment and over the next few years made monthly mortgage payments and invested in renovations on the property.  *Id.*  Mr. Reid took out a second mortgage—purportedly to cover construction costs for renovations that were needed on the property—but instead, Mr. Reid used the money to recoup his share of the original down payment and pay off other debts in his name.  *Id.*

By the end of the three-year period, Ms. Zanders's relationship with Mr. Reid had ended.  *Id.*  Ms. Zanders had not been able to obtain a mortgage, but continued to live on the property and make mortgage payments.  *Id.*  In 2001, Mr. Reid took out a third mortgage, again keeping all proceeds for himself, raising the total indebtedness to $191,000.  *Id.*  Later that year, he and Ms. Zanders met to

discuss another refinancing, and agreed, according to Ms. Zanders, to an additional three years for Ms. Zanders to obtain a mortgage in her name for the property—at which time Mr. Reid would convey title to her in accordance with the original agreement. *Id.* Ms. Zanders continued to live on the property and to make mortgage payments. *Id.* In 2003, she paid the property taxes to prevent the house from being sold at a tax sale, and also covered other renovation and maintenance costs. *Id.* at 1099–1100.

In 2004, at the conclusion of the second three-year term, Ms. Zanders offered to purchase the property from Mr. Reid for $190,000. *Id.* at 1100. Mr. Reid rejected that offer, instead offered to sell Ms. Zanders the house for $300,000, and when she refused, entered into a conditional agreement with Richard and Shirley Baker to sell them the property for $350,000. *Id.* Consistent with the requirements of the Tenant Opportunity to Purchase Act (TOPA),[1] Mr. Reid notified Ms. Zanders of her right of first refusal, which she allegedly attempted to exercise. *Id.* Mr. Reid still proceeded to sell the property to the Bakers for the agreed-upon price, while Ms. Zanders continued to live on the property. *Id.*

Months later, Ms. Zanders filed a complaint against Mr. Reid and the

---

[1] D.C. Code § 42-3404.08 (2012 Repl.).

Bakers, alleging causes of action for breach of contract, promissory estoppel, fraud, interference with contractual relations, intentional interference with business expectancy, and violation of Ms. Zanders's right of first refusal under TOPA. *Id.* She also filed a *lis pendens* on the property with the Recorder of Deeds. Around the same time, the Bakers filed an action against Ms. Zanders in the Landlord and Tenant Branch in order to evict her for nonpayment of rent. *Id.* A protective order was entered in that action directing Ms. Zanders to pay rent to the court registry, and that action was later consolidated with the civil action. *Id.*

The trial court granted the Bakers' motion to strike Ms. Zanders's claims against them and for the entry of judgment in their favor, due to Ms. Zanders's failure to make the rent payments required by the protective order. *Id.* The suit against Mr. Reid proceeded to trial, but only the TOPA claim was ultimately submitted to the jury, and the court instructed the jury to determine an award for monetary damages only—rejecting Ms. Zanders's argument that she should be entitled to specific performance in the form of regaining possession of or title to the house. *Id.* at 1102–03. The jury awarded Ms. Zanders $210,000 in damages. *Id.* at 1103.

On appeal, we held that, though the entry of judgment for the Bakers in their Landlord and Tenant action against Ms. Zanders should stand, the trial court had

erred by dismissing Ms. Zanders's claims for fraud and tortious interference with her contractual right to purchase her home from Mr. Reid. *Id.* at 1102. We also held that the court had erroneously dismissed her claims against Mr. Reid for breach of contract and promissory estoppel, and that on remand, Ms. Zanders was entitled to the enforcement of the jury award for monetary damages against Mr. Reid, as well as to the court's consideration of a constructive trust against him on any property that he might have acquired using the proceeds from his sale of the house to the Bakers. *Id.* at 1104. Finally, we stated that on remand Ms. Zanders could seek to add a TOPA claim against the Bakers as alleged non-bona fide purchasers, assuming her claim was not time-barred. *Id.*

While our decision in the first appeal was pending, the Bakers sold the property to Tina Brower-Thomas and Gordon Thomas. On remand, Ms. Zanders initially filed a complaint against Mr. Reid, the Bakers, and the Thomas parties.[2] Ms. Zanders's fifth and final amended complaint named only the Bakers and the Thomas parties, requested a declaratory judgment that neither party was a bona fide purchaser of the property, included a claim for a resulting and constructive trust against all parties, and alleged intentional interference with business

---

[2] Along with Ms. Brower-Thomas and Mr. Thomas, Ms. Zanders named Suntrust Mortgage, Inc., and Richard Lash, the trustee of the Deed of Trust for the property.

expectancy and TOPA claims against the Bakers. In addition to monetary damages, Ms. Zanders requested an order setting aside any deed of property issued to the Bakers and an order for specific performance of the agreed upon subject property.

The trial court found that the Bakers and the Thomas parties were estopped and precluded from relitigating whether Ms. Zanders's TOPA rights were violated because each party was in privity with Mr. Reid and that neither party was a bona fide purchaser without notice. It therefore awarded Ms. Zanders nominal damages against the Bakers. The court declined to enter a constructive or resulting trust on the property, found that Ms. Zanders could not prevail on her claim for tortious interference, and denied Ms. Zanders's request for specific performance. In its order denying reconsideration, the trial court further declined to find the Bakers jointly and severally liable for Mr. Reid's TOPA violation or to enter a default judgment for Mr. Reid on the claims alleged against him in the second amended complaint.

On appeal, Ms. Zanders argues on various grounds that the court erred by not entering a default judgment against Mr. Reid, not awarding Ms. Zanders the property, not imposing a constructive and resulting trust, and not finding the Bakers jointly and severally liable for the award against Mr. Reid. The Bakers and

the Thomas parties argue that the court erred by finding that they were precluded from arguing that Ms. Zanders's TOPA rights were not violated, and the Thomas parties additionally argue that they should be entitled to attorney's fees. We address these arguments in turn.

## II. Discussion

### A. Mr. Reid

At the outset, Ms. Zanders argues that the court erred by not allowing her to pursue her various claims against Mr. Reid. Following Ms. Zanders's second amended complaint, a default was entered against Mr. Reid for failing to participate in the case. Ms. Zanders did not move for a default judgment. Instead, she filed a third, fourth, and fifth amended complaint, without naming Mr. Reid as a party. She now contends that because Mr. Reid was mentioned in the pretrial statement following the fifth amended complaint, he is properly included in this suit, and that the trial court should have entered a default judgment against him.

Super. Ct. Civ. R. 55(b)(2) states that no later than "60 days after a default is entered, the party must apply to the court for a default judgment either by motion or praecipe, served on all parties, requesting the setting of an ex parte proof hearing." "An entry of default is simply an interlocutory order, whereas a default

judgment is a final judgment that terminates the litigation and decides the dispute." *Arthur v. District of Columbia*, 857 A.2d 473, 483–84 (D.C. 2004) (quoting *Lockhart v. Cade*, 728 A.2d 65, 68 (D.C. 1999)) (internal quotation marks omitted). Thus, "[i]n general, the entry of default does not constitute a judgment, but simply precludes the defaulting party from offering any further defense on the issue of liability." *Id.* at 483 (quoting *Lockhart*, 728 A.2d at 68). Even if a party is in default and the clerk of the court has entered that default, the decision whether to grant a default judgment is within the sound discretion of the court. *See Fanning v. Permanent Sol. Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009). In this same vein, as the trial court noted, once an amended complaint has been filed, if that complaint does not incorporate by reference previous pleadings, and does not name the defaulting party, the amended complaint renders any previous complaints a legal nullity. *See West Run Student Hous. Assocs. v. Huntington Nat'l Bank*, 712 F.3d 165, 172 (3d Cir. 2013); 3 *Moore's Federal Practice* § 15.08 970 (2d ed. 1974).

Here, Ms. Zanders did not include Mr. Reid in her fifth amended complaint. He was not served or otherwise notified of continuing proceedings against him. *See Threatt v. Winston*, 907 A.2d 780, 783 (D.C. 2006) ("[A] default judgment entered in the absence of effective service of process is void . . . ."). Ms. Zanders also never applied for a default judgment within the required timeframe. Under

these circumstances the trial court did not err in declining to enter a default judgment against Mr. Reid in its order denying Ms. Zanders's motion for reconsideration.[3]

### B. TOPA Claims

Because the jury had found in the first trial that Mr. Reid had violated Ms. Zanders's TOPA rights, the trial court concluded that the doctrines of collateral estoppel and res judicata barred the Bakers and the Thomas parties from challenging that finding. The court further ruled that neither the Bakers nor the Thomas parties were bona fide purchasers without notice, because they had separate bases for knowing of Ms. Zanders's interest in the property and accordingly should have questioned whether she might have rights under the TOPA statute.[4] The court thus declined to grant Ms. Zanders title to or possession

---

[3] Ms. Zanders relies on *Pellerin v. 1915 16th Street, N.W., Co-op Ass'n*, 900 A.2d 683, 688 (D.C. 2006), to argue that the court should have treated the reference to Mr. Reid in the pretrial statement as incorporating the claims and default against him. But in *Pellerin* the plaintiff included new theories of liability stated in the pretrial statement based on facts not previously disclosed, as compared to a reference to a party who was not even served with or otherwise notified of the complaint or pretrial statement. Where the new claims might have been appropriately considered in *Pellerin* absent good reason not to, the same cannot be said about entering a default against an absent party like Mr. Reid.

[4] The Bakers argue that the trial court erred by concluding that they were not bona fide purchasers without notice. Specifically, they contend that it was

(continued…)

of the house,[5] but awarded her nominal damages.

The Bakers and the Thomas parties contend that they should not have been precluded from arguing that Ms. Zanders's TOPA rights were not, in fact, violated, because she failed to provide a written statement of interest to Mr. Reid within 30 days, as required by D.C. Code § 42-3404.09(1) (2001).[6]  The statement-of-interest

---

(…continued)

irrelevant whether they knew that Ms. Zanders was residing in the property and making mortgage payments, because they did all they could be expected to do to feel comfortable that Mr. Reid had complied with TOPA prior to the sale.  That the Bakers were aware of Ms. Zanders's expressed belief, through her actions and statement of interest (whether timely delivered or not), that she may have some claim to the property justifies the trial court's finding that they were in fact on notice.  *See Clay Props., Inc. v. Wash. Post Co.*, 604 A.2d 890, 895 (D.C. 1992) (en banc) (stating that all that is required for a party to be put on notice is some circumstantial evidence from which the notice may be inferred and that "[t]he purchaser is on inquiry notice of all facts and outstanding interests which a reasonable inquiry would have revealed").

[5]  The trial court decided not to award specific performance on the ground that Ms. Zanders had not established that she was "ready, willing, and able" to purchase the property.  Ms. Zanders contests this finding on appeal, but because we conclude that the trial court erred in estopping the Bakers and the Thomas parties from rebutting Ms. Zanders's TOPA claim, we need not reach this issue. For the same reason—among other bases provided by the trial court—we also conclude that the Bakers and Thomas parties were not jointly and severally liable for the damages awarded in compensation for Mr. Reid's TOPA violation.

[6]  This statute was subsequently amended by D.C. Law 17-234, D.C. Law 18-193, and D.C. Law 22-120.  The most recent amendment exempted single-family accommodations from TOPA coverage, except for those with elderly tenants or tenants with disabilities.  Those tenants now have 20 days to deliver a

(continued…)

provision required that "[u]pon receipt of a written offer of sale from the owner . . . the tenant shall have 30 days to provide the owner and the Mayor . . . a written statement of interest on the part of the tenant to exercise the right to purchase[.]" Ms. Zanders conceded at oral argument that Mr. Reid did not receive her statement of interest within 30 days. This concession was consistent with the evidence presented at trial—specifically, Ms. Zanders's testimony that at the latest, she had received the offer of sale by August 23, 2004, that she sent a letter of interest to the District on September 21 and then a statement of interest to Mr. Reid on September 22, and that Mr. Reid received that statement in the mail the following day.

In 2010—following our decision in *Zanders I* and before Ms. Zanders filed her final amended complaint—we confirmed that in order to comply with the TOPA statement-of-interest requirement, a tenant was required to ensure that the notice *reached* the owner in 30 days, not to deposit the notice in the mail within 30 days. *Tippett v. Daly*, 10 A.3d 1123, 1134 (D.C. 2010) (en banc). In addition to Ms. Zanders's argument that the Bakers and the Thomas parties are precluded or estopped from asserting that Mr. Reid did not violate Ms. Zanders's TOPA rights, she also contends that the *Tippett* decision does not apply retroactively to the time

_____

(…continued)
written statement of interest. D.C. Code § 42-3404.09(a), -3404.09(c) (2018 Supp.).

of sale.

We conclude that the trial court erred by finding that the Bakers and the Thomas parties were precluded and estopped from arguing that Ms. Zanders's TOPA rights were not violated as clarified under *Tippett v. Daly*, because neither party was in privity with Mr. Reid.

Collateral estoppel "renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum." *Modiri v. 1342 Rest. Grp., Inc.*, 904 A.2d 391, 394 (D.C. 2006) (quoting *Davis v. Davis*, 663 A.2d 499, 501 (D.C. 1995)). Under the doctrine of res judicata, "a prior judgment on the merits raises an absolute bar to the relitigation of the same cause of action between the original parties or those in privity with them."[7] *Shin v.*

---

[7] Res judicata is more applicable where there is a second action than it is to claims arising within the same action. *See Calomiris v. Calomiris*, 3 A.3d 1186, 1190 (D.C. 2010) ("The doctrine operates to bar in the second action not only claims which were actually raised in the first, but also those arising out of the same transaction which could have been raised." (quoting *Patton v. Klein*, 746 A.2d 866, 870 (D.C. 1999))). The law-of-the-case doctrine, in contrast, "holds that once the court has decided a point in a case, that point becomes and remains settled unless or until it is reversed or modified by a higher court," or unless other exceptions to

(continued…)

*Portals Confederation Corp.*, 728 A.2d 615, 618 (D.C. 1999) (quoting *Goldkind v. Snider Bros.*, 467 A.2d 468, 473 (D.C. 1983)). We review the trial court's application of both doctrines de novo. *Price v. Indep. Fed. Savings Bank*, 110 A.3d 567, 571 (D.C. 2015) (res judicata); *Franco v. District of Columbia*, 3 A.3d 300, 304 (D.C. 2010) (collateral estoppel).

"A privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case." *Modiri*, 904 A.2d at 396 (quoting *Smith v. Jenkins*, 562 A.2d 610, 615 (D.C. 1989)). The trial court found that the Bakers and Thomas parties were in privity with Mr. Reid, who litigated the TOPA violation in the first trial, because they were successors in interest to the property initially sold by Mr. Reid. A "successor to a party's property interest" is one of the "orthodox categories" of those typically found in privity with a litigating party. *See id.* (quoting *Smith*, 562 A.2d at 615). The typical successor in interest found to be a privy, however, is one who takes by transfer or sale a property *after* judgment. 18A Wright, Miller &

---

(…continued)
the doctrine apply. *Kritsidimas v. Sheskin*, 411 A.2d 370, 371–72 (D.C. 1980); 18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478 (3rd ed. 2002). As these arguments have arisen throughout the course of a single case, the Bakers' and the Thomas parties' contentions might more appropriately have been analyzed under the law-of-the-case framework.

Cooper, Federal Practice and Procedure: Jurisdiction 3d § 4462 (3rd ed. 2017) ("Ordinarily a judgment is binding on a nonparty who took by transfer from a party after judgment or while suit was pending, but is not binding on a nonparty who was involved in a transfer to or from a party prior to institution of the action."). The basic rationale behind holding successors of interest in privity is that the estoppel runs with the property, and that the grantor can transfer no better a title than that he himself has. *See Keokuk & W.R. Co. v. Missouri*, 152 U.S. 301, 314 (1894) ("[N]othing which the grantor can do or suffer to be done after such transfer can affect the rights previously vested in the grantee."); *see also* 18A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 4462 ("The important point is that preclusion arises from the needs of property relationships rather than any theory that the grantor somehow litigates as representative of nonparty who may not even be identified.").

Here, Mr. Reid sold the Bakers the property before Ms. Zanders initiated her action. She filed her TOPA claim against only Mr. Reid, who no longer had title at the time, and the Bakers were dismissed from the case and precluded from influencing the outcome of the TOPA issue at trial. At the time the first suit was filed, the Thomas parties were not even associated with the property. They did not take title from the Bakers until after the jury verdict in the first trial, from which

the Bakers had been dismissed.[8]  As a result, the trial court erred in finding that the Bakers and Thomas parties were in privity with Mr. Reid as to the TOPA claim adjudicated against him.

Claim preclusion does not apply for the additional reason that the question whether Ms. Zanders had complied with the statutory statement-of-interest requirement was not actually litigated and decided in the first trial.  *See Smith*, 562 A.2d at 617.  Before the Bakers were dismissed from the first complaint, they argued, in their opposition to summary judgment, that based on existing case law Ms. Zanders had not complied with the 30-day statement-of-interest requirement under D.C. Code § 42-3404.09.  The trial court ultimately denied Ms. Zanders's motion in conclusory fashion, without addressing the Bakers' argument.

---

[8]  On occasion, courts have found that a successor in interest may be bound by a judgment where the property is transferred while an action is still pending. *See Bank of Am., N.A. v. Griffin*, 2 A.3d 1070, 1071–72, 1077 (D.C. 2010); *First Md. Fin. Servs. Corp. v. District-Realty Title Ins. Corp.*, 548 A.2d 787, 790–91 (D.C. 1988).  The rationale behind these cases, however, is the doctrine of *lis pendens*, which "has the legal effect of providing constructive notice of pending litigation involving real property interests."  *1st Atl. Guar. Corp. v. Tillerson*, 916 A.2d 153, 156 (D.C. 2007) (citing *First Md.*, 548 A.2d at 791).  *See also* Restatement (Second) of Judgments § 44 (1982) ("If property is transferred when an action is pending concerning it, the successor in interest may be aware of the litigation and seasonably join as a party, by intervention or by substitution in place of his transferor.").  The Thomas parties did not take title until after the TOPA claim had been litigated.

At the end of trial, the jury received an instruction stating that in order to comply with TOPA, the tenant was required, upon receipt of sale, to provide the landlord within 30 days a notice of interest. Ms. Zanders argues that because the jury had already considered this argument and found that Ms. Zanders had complied with the statute, the issue has been previously litigated and decided. But there is no indication that Ms. Zanders's compliance with this statute was actually put in issue during the trial. *See Paley v. Estate of Ogus*, 20 F. Supp. 2d 83, 88 (D.D.C 1998) ("Actually litigated' means that the same issue was 'contested by the parties and submitted for determination by the court." (quoting *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983))); *cf. Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co.*, 430 F.2d 38, 45 (5th Cir. 1970) ("If the court, in the former action, assumes to adjudicate an issue or question not submitted by the parties in their pleadings nor drawn into controversy by them in the course of the evidence, and bases its judgment on such adjudication, the judgment is not conclusive in a subsequent proceeding . . . .").

Because the parties were not in privity with Mr. Reid, and because the issue of Ms. Zanders's compliance with the statement-of-interest requirement was not previously litigated, the trial court erred in concluding that Ms. Zanders was entitled to nominal damages. The relevant facts are uncontested—Ms. Zanders did not deliver her statement of interest in the property to Mr. Reid within 30 days of

receiving the written offer of sale as required by the statute in force at the time. Under *Tippett v. Daly*, Ms. Zanders was required to ensure that Mr. Reid actually received her statement within 30 days.  10 A.3d at 1134.

Ms. Zanders's argument that the holding in *Tippett* should not apply because the decision had not been issued at the time of original sale is unavailing.  As Ms. Zanders herself notes, "judicial decisions interpreting statutes are 'given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.'"  *Ross v. District of Columbia Dep't of Emp't Servs.*, 125 A.3d 698, 703 (D.C. 2015) (quoting *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993)).  The proceedings now on appeal are part of the same action initiated by Ms. Zanders in 2004—an action that began as a suit against Mr. Reid and the Bakers in 2004, proceeded to a trial and an initial appeal, and then expanded to include the Thomas parties in an amended complaint on remand.  Moreover, *Tippett* did not purport to change this court's previous interpretation of the statement-of-interest provision in TOPA, but instead confirmed the meaning of the statute in place at the time Mr. Reid executed his sale of the property to the Bakers.

For these reasons, it was error for the trial court to preclude the Bakers and Thomas parties from arguing that Ms. Zanders had failed to comply with D.C.

Code § 42-3404.09. Because the relevant facts are undisputed, we likewise conclude that Ms. Zanders did not timely submit her statement of interest and that she is therefore not entitled to damages against either the Bakers or the Thomas parties for the alleged TOPA violation.

## C. Resulting and Constructive Trusts

Ms. Zanders next argues that the trial court erred in declining to impose both a resulting and constructive trust as an equitable remedy for unjust enrichment.[9] "A resulting trust is a property relationship designed to effectuate the parties' intent when one party takes title to property for which another has furnished the consideration." *Edwards v. Woods*, 385 A.2d 780, 783 (D.C. 1978). Such a trust ordinarily arises in favor of a person who pays the purchase price "[w]hen a transfer of property is made to one person and the purchase price is paid by another." *Leeks v. Leeks*, 570 A.2d 271, 274 (D.C. 1989). "A resulting trust does not arise where a transfer of property is made to one person and the purchase price is paid by another, if the person by whom the purchase price is paid manifests an

---

[9] In her brief on appeal, Ms. Zanders does not specify on what proceeds or property the court should have imposed a trust. She focuses her argument primarily on the alleged misconduct of Mr. Reid, without mention of the Bakers or the Thomas parties. Because she explicitly challenges the trial court's ruling on these issues as to counts alleged against all parties, however, we review the trial court's findings for error as to each party.

intention that no resulting trust should arise." Restatement (Second) of Trusts § 441 (1959); *see also Leeks*, 570 A.2d at 275 (citing § 441 of the Restatement).

We review a court's findings as to the intent of the parties for clear error. *See Edwards*, 385 A.2d at 783–84; *Strauss v. New Market Glob. Consulting Grp., LLC*, 5 A.3d 1027, 1033 (D.C. 2010). It is undisputed that Ms. Zanders and Mr. Reid had an agreement under which Ms. Zanders was to be afforded the opportunity to purchase the property if she met certain conditions. Whatever unjust actions Mr. Reid may have taken against Ms. Zanders, there is no contention, either in the complaint or on appeal, that the two intended for Mr. Reid to hold the title of the property for Ms. Zanders at the time of purchase. And as the trial court further found, Ms. Zanders did not establish that the Bakers had any knowledge of her two oral agreements with Mr. Reid, even if they knew more generally of her interest in the property. We discern no error in the conclusion that Ms. Zanders was not entitled to a resulting trust.

A constructive trust is likewise a remedy for combatting unjust enrichment, and "arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if permitted to retain such interest." *Gray v. Gray*, 412 A.2d 1208, 1210 (D.C. 1980) (quoting 4A Powell on Real Property ¶ 594 at 48–3 and 48–4 (1979)). Unlike a

resulting trust, a "constructive trust may be impressed upon property irrespective of the intention of the parties." *Id.* at 1211; Restatement (Third) of Trusts § 7 cmt. a (2003). "Inequitable conduct short of fraud" may warrant this remedy. *Hertz v. Klavan*, 374 A.2d 871, 873 (D.C. 1977). The court may impose a constructive trust on any property acquired using the proceeds of the sale of the subject property, *Zanders I*, 980 A.2d at 1102, or on the subject property itself in order to compel a defendant to fulfill the trust by conveying title according to the original agreement. *See Mandley v. Backer*, 121 F.2d 875, 876 (D.C. 1941); *Gray*, 412 A.2d at 1210.

As we noted in *Zanders I*, Ms. Zanders had a potential claim for the imposition of a constructive trust against Mr. Reid, which she was free to pursue on remand. 980 A.3d at 1102, 1104. Yet in her fifth and final complaint, Ms. Zanders named only the Baker and Thomas parties in her constructive trust claim. Even assuming Mr. Reid was unjustly enriched by the transaction, Ms. Zanders does not explain why the Bakers and the Thomas parties were as well. And again, Ms. Zanders does not challenge the trial court's key finding that although the Baker and the Thomas parties may have been aware of her interest in the property, she did not establish that they had any knowledge of her oral agreements with Mr.

Reid.[10]  Ms. Zanders also does not suggest any other form of deceit or other rationale by which the Baker and the Thomas parties might have been unjustly enriched by the transaction, thus warranting an equitable remedy.

Ms. Zanders argues that her case is most analogous to *Porter v. Zuromski*, 6 A.3d 372 (Md. Ct. Spec. App. 2010).  There, a woman and her boyfriend decided to purchase a home together, but because of the woman's credit score, the parties could not qualify for a loan jointly and they agreed that the boyfriend would apply for a mortgage loan in his name only.  *Id.* at 374.  The parties agreed that the boyfriend would put his girlfriend's name on the deed, but without informing her, he ultimately did not put her name on the deed.  *Id.*  Each continued to pay half of the mortgage and other expenses, until their relationship deteriorated and the

---

[10]  Ms. Zanders acknowledges this finding by the trial court in the section of her brief that challenges the court's conclusion that she did not satisfy the elements of tortious interference with a business interest.  But instead of challenging the finding, she argues that the relevant fact for her tortious interference claim was that the Bakers were on inquiry notice when they purchased the property.

To establish a claim for intentional interference with business relations—or tortious interference—a plaintiff must establish, among other things, the "existence of a valid contractual or other business relationship" and "the defendant's knowledge of the relationship." *Onyeoziri v. Spivok*, 44 A.3d 279, 286 (D.C. 2012).  Given the trial court's unchallenged finding that Ms. Zanders did not establish that the Bakers knew of her contract with Mr. Reid, we are not persuaded that the trial court erred by denying this claim.

boyfriend ordered his girlfriend to vacate the property. *Id.* at 374–75. The court held that the evidence supported the imposition of a constructive trust in favor of the girlfriend—and emphasized that the girlfriend's "monetary and non-monetary investments in the property demonstrated that she clearly relied on [defendant's] representation that she would become co-owner of the house." *Id.* at 380.

The key distinction between Ms. Zanders's case and *Porter* is that the defendant in *Porter* was a party to the initial oral agreement. *Id.* at 374. The court considered his conduct to be "misrepresentation if not fraud" and concluded it would be inequitable for him to retain exclusive title of the property on the basis of either unjust enrichment or abuse of a confidential relationship. *Id.* at 380. In Ms. Zanders's case, neither the Baker nor the Thomas parties were part of the original agreement between Ms. Zanders and Mr. Reid, and Ms. Zanders has failed to show how they have been unjustly enriched by their purchases of the subject property.[11]

---

[11] Another notable difference between Ms. Zanders's case and *Porter* is that in *Porter*, the plaintiff moved in and began making mortgage and other payments under the assumption that she was a joint owner of the property, when in fact, because of the defendant's misrepresentations, she was not. In contrast, Ms. Zanders made improvements to the property as a tenant, with the agreement that if she obtained the requisite financing, she might obtain the property from Mr. Reid. This distinction lends further support to the trial court's conclusion that there was "no basis on this record for a finding of mistake of fact, fraud, undue influence, or breach of fiduciary duty," and that Ms. Zanders was thus not entitled to a constructive trust.

We therefore conclude that the trial court did not err by declining to impose a constructive trust.[12]

### D. Attorney's Fees

Finally, the Thomas parties argue that the trial court erred by denying their motion for an award of attorney's fees, pursuant to D.C. Code § 42-1207(d), because Ms. Zanders offered no evidence of her ability to pay the purchase price of the home, and because she failed to preserve her plea of title by tendering court-ordered payments. The trial court may impose sanctions on a party that files a *lis pendens* for an improper purpose, where the filing is unwarranted by existing law or without evidentiary support, or where the party files a "frivolous argument for the extension, modification, or reversal of existing law." *6921 Georgia Ave., N.W., Ltd. P'ship v. Univ. Comm. Dev., LLC*, 954 A.2d 967, 973 (D.C. 2008). "A trial court need not make a finding of bad faith . . . ." *Id.* "An award of attorney's fees can be an appropriate sanction . . . ." *Bloom v. Beam*, 99 A.3d 263, 268 (D.C. 2014). We review a court's grant or denial of a sanctions award for an abuse of discretion. *Id.* at 269.

---

[12] Because we affirm the trial court's order declining to impose a constructive trust, we do not address the Bakers' laches defense.

As the trial court noted, although Ms. Zanders had not prevailed in the Landlord and Tenant action, "[j]udgment for possession based on non-payment of a protective order does not have collateral estoppel effect." *Mullin v. N St. Follies Ltd.*, 712 A.2d 487, 493 (D.C. 1998) (quoting *R & A, Inc. v. Kozy Korner, Inc.*, 672 A.2d 1062, 1071 (D.C. 1996)). "The striking of [a t]enant's pleadings will affect the tenant only insofar as it precludes the tenant from continuing to live in an apartment at which she or he is demonstrably unable to pay the rent." *Zanders*, 980 A.2d at 1101 (brackets in original) (quoting *Mahdi v. Poretsky Mgmt., Inc.*, 433 A.2d 1085, 1089–90 (D.C. 1981)). The court further found that, though it did not agree with Ms. Zanders's claims on the merits, those claims were not wholly without evidentiary support. In light of this precedent and the adequate factual analysis the court provided in support of its conclusions, the trial court did not abuse its discretion by finding that, regardless of the technical validity of Ms. Zanders's *lis pendens*, the Thomas parties were not entitled to attorney's fees as a form of sanction.

## III.  Conclusion

For the foregoing reasons, we reverse the trial court's award of nominal damages to Ms. Zanders but otherwise affirm the judgment of the Superior Court.

*So ordered.*